### ED. T. OVERAND V. JACOB MENCZER ET AL.

#### No. 3169.

1. **Evidence Incompetent.** — The plaintiff in trespass to try title claimed title under deed from a widow, the lot being her separate property. As against this title it was incompetent to prove foreclosure proceedings in which her husband was plaintiff, in which it was recited that the notes sued on were for purchase money for the land, and that "on the 18th of April the plaintiff, *joined by his wife*, executed a deed to H., one of the defendants, for the land," etc. The wife was no party to said suit, and neither recitations in the pleadings, the judgment or sale thereunder, affected her title to the land.

2. **Husband's Right to Sue for Wife's Property.**—While a husband can sue alone to recover the separate property of his wife (art. 1204, Rev. Stats.), this doctrine

does not authorize the assumption that a suit brought by a husband is to recover the separate property of the wife when it does not purport to have been instituted for that purpose. See example.

3. **Description in Deed — Limitation of Five Years.**— A sheriff's deed described land sold as *one acre square* out of the southeast corner of a described larger tract. The land in controversy is not in a square, but something over one-half of it would be included within a square acre taken as described in sheriff's deed. The records referred to in the sheriff's deed indicated the locality of the larger tract from which the *acre square* was taken. *Held*, such deed was not void for want of description, as the land sold by the sheriff can be found and identified with reasonable certainty.

4. **Limitation.**—It being shown that the sheriff's deed included part of the land in controversy, it was competent to the extent of that included as a basis for limitations under the statute of five years. But see facts held insufficient to show continuous adverse possession for the term of five years.

5. **Proof of Execution of a Lost Deed.** — That the deed was lost did not dispense with the necessity of proving its lawful execution, and that it once existed as a valid deed.

APPEAL from Dallas. Tried below before Hon. R. E. BURKE. The opinion states the case.

*J. M. Hayes, McCormick & Spence,* and *Walton, Hill & Walton,* for Ed. T. Overand, appellant.—1. The written pleadings in a suit, not signed and not sworn to by a party, can not be used as evidence against even him in another suit. Much more are such pleadings inadmissible as evidence in another suit as against one who was not a party to the first suit, and who does not claim in privity with such party.

2. No one is bound by a judgment to which he was not a party, and no judgment against or in favor of the husband alone, to which the wife was not otherwise a party, can operate to divest her title to her separate property. Buzard v. McAnulty, 77 Texas, 438–446; Read v. Allen, 56 Id., 182, 194.

3. On the issue of the execution vel non of a valid deed of conveyance by a married woman of her separate property, a trust deed executed by an alleged purchaser from her husband of her separate property is wholly inadmissible as evidence or for any purpose.

4. A sheriff's deed, except for the purpose of supporting a plea of limitation, is inadmissible as evidence of title unless supported by a corresponding valid judgment and fieri facias, and the judgment must have been rendered against the party to the suit, against whom it is offered, or against some person with whom such party claims in privity. In order to support the plea of the five years statute of limitation, the deed relied upon must accurately describe the land, and must apply to and embrace the identical land involved in the suit. Tudor v. Hodges, 71 Texas, 392; Summers v. Hancock, 23 Texas, 150; Witherspoon v. Railway, 48 Texas, 309; Sayles' Civ. Stats., art. 3193, note 17.

5.   If a deed to land is lost, it must first be proved that such a document was properly executed and once existed as a valid instrument of conveyance.   And after its loss has been established, the secondary evidence of the contents, or the substance of the contents, of its operative parts must be clear and direct, and its execution must be distinctly proved.   Vandergriff v. Piercy, 59 Texas, 371; Sayles' Civ. Stats., art. 2257, note 14; 1 Greenl. on Ev., sec. 349; Id., sec. 558, note 1, and authorities cited.

*W. T. Strange,* for Jacob Menczer, appellee; *Thos. T. Holloway,* for Mrs. Julia Menczer, appellee and guardian ad litem for Jessie Menczer, appellee.—1.  The result of the foreclosure suit brought by Wesley Overand against James Harkness and Joseph Menczer is conclusive and binding upon the wife, Mrs. Agnes Overand, and constitutes res adjudicata as to her and her vendee.  Rev. Stats., arts. 1204, 2851; Read v. Allen, 56 Texas, 182, 193, 194; Gunter v. Fox, 51 Texas, 383, 388, 389; Bradford v. Knowles, 78 Texas, 109; Lee v. Kingsbury, 13 Texas, 68, 70; Nichols v. Dibbrell, 61 Texas, 539.

2.   The pleadings in the foreclosure suit were admissible in evidence —not as admissions, but for the purpose of ascertaining the issue tried in that case; and for that purpose they were properly admitted.  Bradford v. Knowles, 78 Texas, 109, 116.

3.   The sheriff's deed in the foreclosure suit, made to Joseph Menczer, contains a sufficiently definite description of the land, and conforms to the foreclosure decree, and is therefore admissible both as showing title and as a deed duly registered.   Wilson v. Smith, 50 Texas, 365; Brown v. Chambers, 63 Texas, 131, 135; Berry v. Wright, 14 Texas, 270; Knowles v. Torbett, 53 Texas, 557; Westmoreland v. Carson, 76 Texas, 619; Wooters v. Arledge, 54 Texas, 395; Rainbolt v. March, 52 Texas, 246; Bowles v. Beal, 60 Texas, 322; 2 Dev. on Deeds, sec. 1020.

4.   There was sufficient evidence to warrant the conclusion that a deed had been executed by Mrs. Agnes Overand to James Harkness, even if such a deed were necessary to the defendant's title.   Dunn v. Choate, 4 Texas, 14; Parks v. Candle, 58 Texas, 216.

TARLTON, JUDGE, *Section B.*—This action of trespass to try title was brought May 10, 1888, in the District Court of Dallas County, by appellant Ed. T. Overand, as plaintiff, against the appellees, Jacob Menczer, executor of Joseph Menczer, deceased, and Mrs. Julia Menczer and Jessie Menczer, widow and minor child of Joseph Menczer, defendants.

The land involved in the suit was a lot in the city of Dallas, of which, on account of a question arising in the case, it is deemed best to insert the description, as follows: Lying about one mile north 13 degrees

east from Dallas County court house, conveyed by M. W. Packer and wife S. M. Packer to W. Overand and wife Agnes Overand, by deed recorded in Book N, page 149, of record of deeds of Dallas County, Texas.   Beginning at the east corner of said 11-acre tract; thence with northeast line of said 11-acre tract north 45 degrees west 100 feet; thence south 51 degrees 10 minutes west 349½ feet to southwest line of said 11-acre tract; thence with said southwest line south 45 degrees east 137 feet to south corner of said tract; thence north 45 degrees east with the southeast line of said tract $347\frac{22}{100}$ feet (125 varas) to the beginning; and containing 41,145½ square feet of land.

The defenses relied upon are general denial, plea of not guilty, and the statutes of limitation of three, five, and ten years.

On June 4, 1890, a trial by jury was had, resulting in a verdict and judgment for the defendants, from which this appeal is prosecuted.

It is admitted that the property in controversy was formerly of the separate estate of Mrs. Agnes Overand, wife and subsequently widow of Wesley Overand, and stepmother of plaintiff.   Plaintiff and appellant claims through a deed executed to him by Mrs. Agnes Overand after the death of her husband, July 22, 1886, and including the land in controversy.

Aside from their plea of limitation, defendants and appellees, Mrs. Julia Menczer and Jessie Menczer, claim as heirs of Joseph Menczer, deceased, (1) through a deed alleged to be lost and charged to have been executed by Wesley Overand and his wife Agnes Overand to one James Harkness; and (2) through a sheriff's deed to Joseph Menczer as purchaser at a sale had under foreclosure proceedings in a suit No. 3982, styled "Wesley Overand v. James Harkness and Joseph Menczer," the character of which will be hereafter more fully disclosed.

Appellant asigns as error the action of the court in admitting in evidence over his objection, (1) the pleadings in the cause No. 3982; (2) a certain trust deed executed by James Harkness to N. B. Loughlin to secure the payment of the four promissory notes executed by Harkness to Wesley Overand, and set out in the petition in the suit No. 3982; (3) the sheriff's deed to Joseph Menczer, already referred to.

The ground of the objection was in effect that Mrs. Agnes Overand, appellant's vendor, was not a party to the cause No. 3982, and that consequently with reference to her separate property she could not be affected by the proceedings in said cause or by the trust deed or sheriff's deed connected therewith.   The pleadings in the cause No. 3982 consisted of a petition by Wesley Overand and of an answer by Joseph Menczer.   No answer appears to have been filed by James Harkness.

The plaintiff Wesley Overand alleged, that "on April 18, 1878, one James Harkness executed and delivered to plaintiff his four promissory notes; that the consideration of the notes was a tract of land *sold and conveyed by plaintiff to said Harkness April 18, 1878*, in Dallas

County, about one mile northeast from the court house of said county, etc.; that the notes represent the purchase money for the land, and are a vendor's lien on the same; that defendant Joseph Menczer claims to own three of the notes by transfer to him by plaintiff, and also claims an interest in the land; that Harkness failed and refused to pay the remaining note owned by plaintiff," who prayed that he have judgment for his debt, for foreclosure of his vendor's lien, and that defendant Joseph Menczer be made to show his interest in the land, etc.

Joseph Menczer in his answer alleged, "that on the 18th of April, 1878, the plaintiff Wesley Overand, *joined by his wife*, made, executed, and delivered to James Harkness a deed for the tract or parcel of land described in plaintiff's petition; that said Harkness executed for the payment of said land and for the purchase money his four promissory notes, and to secure same the said Harkness executed and delivered, *at the request and special instance of said Wesley Overand and wife*, to one N. B. Loughlin, as trustee, their certain deed of trust, whereby said land was transferred to said Loughlin, trustee, to be sold in default of payment of said notes, which deed of trust was attached as an exhibit, etc.; that before their maturity Wesley Overand indorsed and transferred three of said notes to defendant Menczer; that on default made in the payment of the three notes transferred, Loughlin, trustee, advertised and sold the property under the terms of the deed of trust, Joseph Menczer becoming the purchaser for $30, and took deed from the trustee, who placed him in possession of the land," etc. He averred that Wesley Overand's claim was therefore lost and barred.

The judgment in this cause decreed a foreclosure of the four promissory notes executed by James Harkness to Wesley Overand, adjudged the amount due, and ordered a sale with directions to apply the proceeds pro rata to the note owned by Wesley Overand and to the three owned by Menczer, and annulled the deed executed by Loughlin, trustee. At the sale under the judgment Joseph Menczer became the purchaser and took deed from the sheriff September 8, 1880.

We are of the opinion that the objection of appellant should have been sustained. One can not be bound by the proceedings in a suit unless he be actually or constructively a party thereto. Read v. Allen, 56 Texas, 193. It does not appear that Mrs. Agnes Overand was in any sense a party to this cause No. 3982. No evidence was introduced tending to show that she had joined her husband Wesley Overand in the execution of a deed to James Harkness. The petition does not allege the execution of such a deed, but declares upon four promissory notes drawn by James Harkness in favor of Wesley Overand in consideration of a conveyance executed by Wesley Overand to James Harkness. It is true, as contended by appellees, that a husband can sue alone to recover the separate property of his wife. Rev. Stats., art. 1204. This doctrine, however, does not authorize us to assume

that a suit brought by the husband is to recover the separate property of the wife when it does not even purport to have been instituted for that purpose.

The allegations in the answer of the defendant Joseph Menczer, that the notes were executed in consideration of a conveyance made by Wesley Overand and his wife Agnes Overand, could in no way affect the latter. They are but declarations of a third person, and are hearsay. Admissions or statements in pleadings, in order to affect a party, must be made by the party himself or by one by him authorized. Buzard v. McAnulty, 77 Texas, 445. The trust deed and the sheriff's deed are incident to the proceedings criticised, and as evidence of title in defendant were alike inadmissible. The sheriff's deed, however, was offered not only as evidence, but also as a basis for appellees' plea of five years limitation. As evidence for this purpose, objection, upon the soundness of which we are required to pass, was interposed on the ground, (1) that the deed is void for uncertainty of description; or, (2) that if sufficient to convey any land whatever, it does not describe the land involved in this suit. The description as contained in the sheriff's deed is as follows: "Situate in the State of Texas, County of Dallas, about one mile northeast from the court house of said county, being *one acre square* out of the 11-acre tract deeded to Wesley Overand by W. M. and S. M. Packer; beginning at the southeast corner of said 11 acres, and to agree with the metes and bounds made by J. N. Coles; said deed referred to as made by Packer is recorded in Book U, pages 149 and 150, of Dallas County record of deeds," etc.

The deed to Wesley Overand by W. M. and S. M. Packer is referred to in several instruments elsewhere in the record as recorded in Book N, page 149. We therefore apprehend that the letter "U" in the foregoing description is due to a clerical error, and was intended for "N."

Subsequent to the introduction of the sheriff's deed, J. H. Cole, a witness for the appellees, testified, in effect, that ten or twelve years before the trial, he, as a surveyor, made a survey for Wesley Overand of about one acre of land, beginning at the east corner of the 11-acre tract in question; that, as well as he could recollect, the land surveyed by him is the land in controversy in this suit; that the land involved is not an acre square.

The question under consideration presents itself thus to us: Is the deed *upon its face* void for want of sufficient description? The land which is purported to be conveyed is *one acre square*, a definite quantity, beginning at the southeast corner of a tract of 11 acres, described in a deed from Packer to Overand, recorded in a specified public record and on a specified page. "If, from the description contained in the sheriff's deed or deeds or instruments therein referred to, the land can

be found and identified with reasonable certainty, then the conveyance will be sustained." Brown v. Chambers, 63 Texas, 135; Norris v. Hunt, 51 Texas, 610. By means of the description contained in the deed, and the conveyance from Packard therein referred to, the *one acre square* could be easily identified. The recital, "to agree with the metes and bounds made by J. N. Coles," read in the light of J. H. Cole's testimony, and taking J. H. Cole and J. N. Coles to be the same person, would inject into the description an element of uncertainty and contradiction. We are of opinion, however, that if the recital in the instrument does not on its face beget uncertainty in the description, and the latter reasonably affords the means of identifying the land, it should be deemed sufficient to render the deed admissible in evidence. The deed would not be void for want or uncertainty of description. Construing from the face of the deed in question the recital, "to agree with the metes and bounds made by J. N. Coles," it would naturally be interpreted to mean that the *one acre square* was set out in the metes and bounds made by Cole, not that the metes and bounds included land of different quantity or different shape from that of the acre square. The recital would therefore reasonably be viewed as surplusage. The first objection was properly overruled.

With reference to the second objection, viz., that the deed does not describe the land involved in this suit, it will be noted from the description heretofore set out of the land in controversy that it is not *one acre square*. It begins at the east corner of the 11-acre tract referred to, and runs thence north 45 degrees west 100 feet; thence south 51 degrees 10 minutes $349\frac{1}{2}$ feet to southwest line of said 11-acre tract; thence with said southwest line south 45 degrees east 137 feet to south corner of said tract; thence north 45 degrees east with the southeast line of said tract $347\frac{22}{100}$ feet to the beginning. An acre square is a piece of land with four equal sides, each side about 209 feet in length. It is equally apparent, however, from the description of the two parcels, that the *one acre square* described in the sheriff's deed includes a portion of the land sued for. To the extent of this inclusion, the sheriff's deed was admissible as a basis for the plea of five years limitation.

Appellant by proper assignment suggests, "that there was not satisfactory or sufficient evidence of possession by defendants of the land in controversy to support the five years statute of limitation."

We are thus required to briefly review the facts bearing upon this question. The defendant Jacob Menczer alone testified on the subject. In his direct examination he stated, that his "brother bought the land in February, 1879, and took possession then, and had tenants on it up to the time he left Dallas, sometime in the month of August, 1883. There was a small log house on the land in 1880, when witness went with his brother to look at the place. Joseph Menczer left Dallas and went to California sometime in the month of August, 1883. In 1884

he went to Europe, by way of New York, and died in Europe in 1887. Witness transacted all his brother's business after his brother left Dallas, in August, 1883. Witness has had possession of the land in this suit ever since his brother left Dallas, in August, 1883, as the agent of his brother up to the time of his death, and after that as his executor and as the agent of his widow and child. Witness had possession by tenants. He did not live on the land. The house is there yet, though in a dilapidated condition now." On cross-examination the witness stated, that his "brother never lived on the land. He only had tenants on it. About 1880 he went with his brother to the land. There was a white man living there, whose name witness does not know. Witness doesn't know whether the man paid rent to his brother or not, nor does he know anything about any contract between the man and his brother. Witness thinks there was a rail fence cutting off the land from the balance of the 11-acre tract. He thinks the land was used by the tenant for a garden. There were indications of a garden there long afterward. He doesn't know what other tenants his brother had on the land. There was a tenant there, a negro, when witness took charge of the place in August, 1883, when his brother left Dallas. The place may *have been empty from time to time before witness took charge of it; he doesn't know.* There was a negro there when witness took charge after his brother left Dallas, in August, 1883. Witness made no contract with him, and collected no rent from him. Witness doesn't know whether he had a contract with his brother or not. There were other tenants who lived there after that, before this suit was brought. Witness can't remember their names. They were negroes. He could not collect any rent from them. They would ask his permission to live there, and he would let them do so. * * * Witness *doesn't know exactly how long the place was vacant between the different tenants.* He can't say how many tenants there were after he took charge. He doesn't remember *whether there was anybody there when this suit was brought.* He can't tell the time when the last tenant moved away. He thinks it was in 1888."

According to this testimony, the witness Jacob Menczer assumed control over the premises in August, 1883. This suit was instituted May 10, 1888. There was not a space of five years between these dates. It becomes necessary, therefore, to show a sufficient possession by Joseph Menczer prior to August, 1883, to constitute, with the holding subsequent thereto, a continuous possession for the period of five years. With reference to the occupancy previous to August, 1883, the evidence is, that "the place may have been empty from time to time." This statement will bear but one interpretation—that the witness does not know whether or not the possession of the premises was continuous. If the premises were vacant, for what length of time were they vacant?

For an indefinite period, perhaps; possibly for months. A similar uncertainty seems to prevail in the mind of the witness with reference to the possession subsequent to August, 1883. Witness "doesn't know exactly how long the place was vacant between the different tenants. He doesn't remember whether there was anybody there when this suit was brought." It devolves upon the party relying upon the defense of limitation to prove the existence of the conditions under which the statute operates. One of these conditions is continuous possession. It is true that intervals, not unreasonable, between the exit of one tenant and the entrance of another will not break the continuity. But where, as in this case, the evidence show the lapses to be of uncertain frequency and of uncertain duration, doubt as to the continuity of the possession naturally arises. It does not sufficiently appear that the possession was continuous, to meet the requirements of the law.

Finally, appellant by proper assignment charges that there was not sufficient evidence to prove the execution of the deed relied upon by appellees from Wesley Overand, joined by his wife Agnes Overand, to James Harkness. It is contended that the deed in question was lost. It was nevertheless necessary to introduce evidence of its proper execution, and that it once existed as a valid instrument of conveyance. 1 Greenl. Ev., arts. 349, 558. This evidence may be of direct or circumstantial character, but it must be offered. Bounds v. Little, 75 Texas, 320. In this case, no one claims to have ever seen a deed purporting to have been executed by Mrs. Agnes Overand. In the entire record there is no hint even that such a deed was ever in existence, except in the statement already condemned as hearsay, to be found in the answer of Joseph Menczer in the cause No. 3982. The isolated fact relied upon by appellees, that the land for a series of years was not rendered for taxes by Mrs. Overand, is wanting in probative force in the absence of other evidence tending to show the execution or the existence of the deed. Appellant's assignment is well founded.

The judgment should be reversed and the cause remanded.

*Reversed and remanded.*