CATHERINE PHILLIPSON ET AL. V. MARGARET FLYNN ET AL.

No. 3392.

1. **Petition in Suit for Partition.**—Two plaintiffs brought suit for partition of a described lot, alleging that they owned each one-quarter of said lot, and that the defendant owned one-half jointly with them. The petition did not allege a possession or trespass by defendant, nor set out the title under which the parties claim. *Held*, that a general demurrer was rightly overruled.

2. **Limitation — Possession by Joint Tenant.** — The possession of a cotenant will be presumed to be in right of the common title. The tenant will not be permitted to claim the protection of the statute of limitations unless it clearly appears that he has repudiated the title of his cotenant and is holding adversely to such cotenant. Possession and payment of taxes on the property do not constitute the assertion of an adverse claim. In order to affect the cotenants with this adverse holding, notice of such fact must be brought home to them, either by information to that effect given by the tenant in common asserting the adverse right, or by such acts of unequivocal notoriety in the assertion of such adverse and hostile claim that they will be presumed to have had notice of such adverse right. See facts held insufficient to charge such notice.

3. **Limitation.**—The defendant, claiming under limitation of ten years, in her testimony developed the fact of seventeen months break in her occupancy. This, unexplained, was fatal to the defense. See facts.

APPEAL from Galveston. Tried below before Hon. WM. H. STEWART. The opinion states the case.

*Hume & Kleberg*, for appellants.—The judgment on the whole case should have been for defendants, because by the evidence it was prima facie established that defendant Catherine in good faith, believing it to be her own, and without knowledge of plaintiffs' right or claim of right therein, held, occupied, and enjoyed said premises in her own sole and exclusive right, adversely to the whole world, for more than ten years next before the commencement of this suit and after the majority of plaintiffs; and to overthrow this defense it was incumbent on plaintiff to show in rebuttal: (1) That they neither knew, nor by reasonable diligence could have known, that defendant Catherine held, used, or occupied said premises adversely to them and to the world for more than ten years next before the commencement of this suit and after their arrival at majority. (2) That defendants' claim and occupation of said premises was secret or fraudulent. (3) That plaintiffs

were deceived or misled by the words or conduct of defendants. (4) That plaintiffs used, or were excused by the circumstances for failing to use, diligence in asserting their right. Church v. Waggoner, 78 Texas, 200–203; Alexander v. Kennedy, 19 Texas, 488; Warfield v. Lindell, 30 Mo., 282; Same Case, 38 Mo., 578; Lapeyre v. Paul, 47 Mo., 590; Lodge v. Patterson, 3 Watts (Pa.), 77; Packard v. Johnson, 57 Cal., 180; Aguirre v. Alexander, 58 Cal., 21; Unger v. Mooney, 63 Cal., 586; Culvers v. Rhodes, 87 N. Y., 355; Freem. on Coten. and Part., sec. 230.

*P. C. H. Brotherson* and *S. S. Hanscom*, for appellees.—1. Upon the death of Edmund Quirk the possession of appellant Catherine was in presumption of law the possession of appellees as well as herself. This presumption she was bound to recognize; and no notice of such adverse possession having been brought home to appellees, their interest in the land was not barred by limitation. Rev. Stats., arts. 548, 1645; Alexander v. Kennedy, 19 Texas, 488; Gilkey v. Peeler, 22 Texas, 663–665; Teal v. Terrell, 58 Texas, 262; Moody v. Butler, 63 Texas, 210; Baily v. Trammell, 27 Texas, 317–328; Portis v. Hill, 3 Texas, 273; Mosely v. Withie, 26 Texas, 720; Freem. on Coten. and Part., sec. 229; Carpenter v. Webster, 27 Cal., 549.

2. Failure of appellees to bring their suit at an earlier date, or to pay taxes, can not defeat their rights in the land, there being no ouster and no adverse possession by appellant for a sufficient length of time to support her plea of limitations. Williams v. Conger, 49 Texas, 582; Murphy v. Welder, 58 Texas, 235; Satterwhite v. Rosser, 61 Texas, 166; Shipman v. Mitchell, 64 Texas, 174.

FISHER, JUDGE, *Section B.*—March 28, 1891, appellees Margaret Flynn and Bernard Flynn brought this suit against Catherine Phillipson and her husband Robert Phillipson, for partition of the northwest block of outlot No. 60, in the city of Galveston, alleging that they owned each one quarter of said property, and the defendant Catherine Phillipson one-half thereof jointly with them.

Defendants answered by general demurrer, plea of not guilty, pleas of three, five, and ten years limitation, and by special plea, alleging that if plaintiffs were tenants in common with Catherine Phillipson, that their right to assert such tenancy was barred by the law of limitations; and specifically setting forth the facts upon which they relied to show such bar.

Plaintiffs replied by supplemental petition, alleging that if defendants ever made claim to the land in controversy in such a manner as to put them upon notice thereof, and to inaugurate the statute of limitations, that at such time they were minors, and that they neither while

minors nor after arriving at majority were notified of the adverse claim to or possession of said lands by defendants.

A jury being waived, the case was tried before the court, who rendered judgment, July 16, 1891, that appellant Catherine Phillipson have and recover one-half the land, and that appellees each recover one-fourth of the land, and that partition be had according to their respective interests. The judgment further finds, that appellees' rights are not barred by limitation.

The court overruled the general demurrer. Appellants insist that this was error, because the petition does not allege a possession or trespass by appellants, and it does not set out the title under which the parties claim. We think when tested by a general demurrer the petition is sufficient. Leigh v. De Ganahl, 16 S. W. Rep., 1037; Glasscock v. Hughes, 55 Texas, 469.

The important questions in the case are, whether the acts of Mrs. Phillipson in claiming the land and her possession thereof amounted to an ouster of the appellees, her cotenants; and if her possession of the land was sufficient to bar them under the ten years statute of limitations.

Briefly stated, these are the facts: Edmund Quirk, the father of Catherine Phillipson and of Mary Flynn, mother of appellees, died November 17, 1873. The lot in controversy was her separate property. Mary Flynn, mother of appellees, died June 16, 1864. Their father John Flynn died September 30, 1864. Appellee Bernard Flynn was born February 6, 1858. Appellee Margaret Flynn was born December 22, 1859. Both were born at Brownsville, Texas, and have resided there since. James G. Brown, after the death of the parents of appellees, was appointed their guardian. He resides in Brownsville, and did at the time of his appointment. February 2, 1874, appellant Catherine Phillipson, in the District Court of Galveston County, filed application for temporary letters of administration on the estate of her father. The application stated, that her father left no will; that he left real estate valued at about $4000, but no personal property; that applicant was his sole heir. She was appointed temporary administratrix, and took the oath required and filed bond. The proceedings and orders of court were entered of record. She filed no inventory of the estate. It appears that Quirk at the time of his death owned no real estate in Galveston County, except the property in controversy. Neither appellees nor any one for them in their name ever rendered the property in controversy for taxation or paid taxes thereon.

Mrs. Phillipson, a witness in her own behalf, testified, that "immediately after my father's death I took full possession of the land in controversy as my own. He told me that he gave it to me, and to take possession of it as my own as his sole heir; that he gave it to me because I had taken care of him in his declining years. He gave lands

in the country to Barney and Maggie Flynn, the plaintiffs. I kept the place together and repaired it, paid all taxes on it, and claimed it as my own, believing that I owned it. No one disturbed me until I got a citation in this case. I never heard of plaintiffs owning any part of it. I collected the rents, paid the taxes, and did not divide the rents with any one. I have held the property since my father's death. I paid taxes on it in my name. I never conceded any claim to the land since my father's death. I have rented out the property and kept the rents. I never lived on the property. The property rented for $8 per month. It was not rented all the time; a portion of the time it was idle. I made but little out of the rents over and above the taxes. The property has been vacant about two years, including about seven months next before the present trial. The condition of the premises is rather dilapidated. I have paid, I believe, between $700 and $800 taxes on the property. I kept the fence and house in repair at my own expense, and looked after the property all the time. There was correspondence between the Flynns and myself. I have the letters now. Mr. Brown, their guardian, was here at my house eleven years ago. He wanted me to take my niece Margaret to live with me. I declined, because I did not have the room and it would inconvenience me; and besides, I had sickness in my family. Everybody knew I claimed the property. All my father's friends knew it. The property referred to in application for letters of administration as being real estate valued at $4000 is the same property in controversy."

This constitutes all the evidence in the record.

The possession of a cotenant or tenant in common will be presumed to be in right of the common title. He will not be permitted to claim the protection of the statute of limitations unless it clearly appears that he has repudiated the title of his cotenant and is holding adversely to it. Possession and payment of taxes on the property do not constitute the assertion of an adverse right. There must be something more. Alexander v. Kennedy, 19 Texas, 496. The acts relied upon by the tenant in common in showing an ouster of his cotenants and the assertion of an adverse claim should be more certain and unequivocal in character than would be necessary in ordinary cases where there is no privity of estate between the parties claiming the property; and in order to affect the cotenants with this adverse holding notice of such fact must be brought home to them, either by information to this effect given by the tenant in common asserting the adverse right; or by such acts of unequivocal notoriety in the assertion of such adverse and hostile claim that they will be presumed to have notice of such adverse right. Moody v. Butler, 63 Texas, 210; Wood on Lim., sec. 266. Whatever must be shown in establishing an ouster and an adverse right by limitation must be proved by the tenant in common asserting such facts. The evidence in this case fails to show any actual notice

given to appellees of the assertion of any adverse claim by appellants, and it is not shown that appellees actually knew of any such asserted right. It is doubtful if the acts relied upon as evidencing the assertion of limitation and the adverse right are sufficient as overt acts to create by implication notice to appellees, the cotenants of appellant. These acts at most show that appellant for a part of the time she was asserting a right to the property rented it and received the rents, which were about equal to the taxes she paid. She was never in personal possession of the property, only by tenant. The evidence does not show the extent of any repairs made by her, but shows that the property is now in a dilapidated condition. The appellees during all this time were living at Brownsville, Texas. Appellant testified, that she had correspondence with appellees, but she does not show that they knew that the parties occupying the premises were her tenants or that she was collecting rents or paying taxes, and it does not show that they knew she had made or was making any repairs or improvements on the place.

But we do not rest the disposition of the case upon this question alone. The evidence in the record shows, that there were two years of the time of the assertion of appellant's claim she was not in possession of the premises, either in person or by tenant. Seven months of this time is accounted for as being immediately preceding the time of the trial, which occurred July 16, 1891. This leaves about seventeen months of vacancy of the premises that occurred at some other time during the period in which appellants were asserting their claim. This break in the possession unexplained destroys the continuity of possession, and limitation would only commence to run de novo when possession was regained. Wood on Lim., sec. 271. When this break in the possession occurred, and when it was renewed, should have been shown by appellants, as the burden rested upon them to show such possession as would create a bar to appellees' right. We do not think such possession was shown, and for this reason we affirm the case. · Appellant upon a motion for new trial seeks to avoid the effect of the evidence offered by appellees upon the question of occupancy of the premises, by asserting in her motion that she did not intend to say that the premises were not occupied, and did not intend to convey such meaning; but that upon the contrary the lot was occupied by her tenants for the entire time she has been asserting claim thereto, and that there had been no break in the possession. The witness was before the court. It was in a better position than this court to judge what she did say, and what meaning she intended to convey. It is not a practice to be encouraged to permit a party, when he relies upon his own evidence to make his case, after he has testified positively to a damaging fact, as the appellant did in this case, to open up the case for the pur-

pose of explaining the damaging testimony or of permitting him to testify differently upon another trial. When only it is apparent that the court below has abused its discretion in overruling the motion will this court reverse the case, which we do not think was done in this case.

We conclude the case should be affirmed, and so report it.

*Affirmed.*