**IOLA STATE BANK v. MOSLEY et al.***
(No. 47.)

(Court of Civil Appeals of Texas.   Waco.
Feb. 7, 1924.   Rehearing Denied
March 6, 1924.)

1. Boundaries ⊙⟼35(2)—Location of boundary lines provable by neighborhood witnesses.

Location of county boundary lines may be proved by general reputation as shown by testimony of neighborhood witnesses, since such location is a matter of public interest.

2. Appeal and error ⊙⟼1024(3)—Weight of neighborhood testimony as to boundary line of county in plea of privilege is for the court.

In determining the merit of a plea of privilege urged because the land in suit was outside the county, the weight of testimony by neighborhood witnesses as to boundary line of the county was for the trial court, and its decision was final.

3. Vendor and purchaser ⊙⟼278—Recording of extension of vendor's lien in one of two counties in which land was situated held sufficient under statutes.

· Rev. St. art. 6827, requires "deeds, conveyances," etc., to be recorded "in the county where such real estate, or a part thereof, is situated." Rev. St. art. 5695, as amended by Acts 1913, First Called Sess., c. 27, § 1 (Vernon's Sayles' Ann. Civ. St. 1914, art. 5695), recited that, "if the contract of extension is signed," etc., and recorded "in the county in which the land is situated, the lien shall continue * * * until four years after maturity of the notes." Held that an extension of a vendor's lien on land situated in two counties was properly recorded in one county only as against a purchaser, though the deeds in the claim of title recited location within the other county, since the latter article did not constitute a complete and independent provision regulating the place of recording, and was intended primarily as a statute of limitations for enforcement of vendor's liens and liens created by deed of trust, and the two statutes must be construed together; the general one applying to cases involving a single tract of land situated partly in two or more counties, and the other to entire tracts within a single county.

4. Statutes ⊙⟼161(1)—To repeal by implication all other recording statutes relating to lien extension agreements, statute must embrace entire subject.

Where prior statutes and those in force at the time expressly prescribe where instruments affecting title to land lying in two or more counties shall be recorded, to justify holding that a later statute repealed them by implication as to recording extension agreements, it must constitute a complete and independent provision regulating place of record of such agreements, and be sufficiently comprehensive to embrace the entire subject of recording extension agreements.

5. Statutes ⊙⟼225—All statutes relating to same general subject construed together.

In the absence of a repealing clause in a later statute, all statutes relating to the same general subject must be considered and construed together as far as reasonably possible.

6. Vendor and purchaser ⊙⟼278—Agreement to extend time to pay vendor's lien note operates only on date, not other provisions.

Under a statute an agreement to extend time of payment of a vendor's lien note is an independent collateral agreement, operating only on the stipulated date of maturity and not, unless expressly so stated, any of the other terms or provisions of such note such as provision for accelerated maturity.

Appeal from District Court, Madison County; Carl T. Harper, Judge.

Suit by R. A. Mosley and others against the Iola State Bank and another. Judgment for plaintiff, and named defendant appeals. Affirmed.

S. W. Dean, of Navasota, for appellant.
J. M. Brownlee, of Madisonville, for appellees.

GALLAGHER, C. J. Appellee R. A. Mosley sued appellee J. D. Rogers and appellant Iola State Bank on a vendor's lien note executed by said Rogers to Mrs. Nellie Mosley and transferred by her and her husband to said R. A. Mosley. He prayed for a judgment against Rogers for the debt and against both Rogers and said bank for foreclosure of the vendor's lien. Appellant filed a plea of privilege, claiming that it was improperly sued in Madison county, and asserting that the venue of the suit lay in Grimes county. Said plea was submitted to the court and overruled. A trial before the court was had immediately, and resulted in a judgment for appellee Mosley against said Rogers for his debt, and against both said Rogers and said bank for a foreclosure of the vendor's lien as prayed. The Iola State Bank has brought the case to this court by appeal.

The note sued on was by its terms payable at a point in Madison county, and the petition alleged that the land for which the note was given and upon which foreclosure was sought was situated partly in Grimes and partly in Madison county. Appellant's plea of privilege contained the averments required by the statute. It was also averred therein that no part of the land upon which foreclosure was sought was situated in Madison county, but that same was situated wholly in Grimes county. Appellee Mosley under oath controverted the plea of privilege, claiming that a part of said land was situated in Madison county.

[1, 2] Appellant contends that the judgment of the court overruling said plea is without support in the evidence. This contention is based on the fact that the location of the dividing line between said counties was proved by witnesses residing in the neighborhood, none of whom were surveyors or otherwise qualified to give expert testi-

mony concerning the location of said line. Several witnesses testified concerning the location of such line and that the same ran through the tract of land upon which foreclosure was sought. No objection was made to their testimony on the ground of competency. The only objection here urged is the insufficiency of the same to support the judgment of the court. All the witnesses resided in the neighborhood and had so resided for years. One of them was present on one occasion and assisted in a survey of such line. The location of the boundary lines of counties may be proved by general reputation. Such location is a matter of public interest, and the prevailing current assertion concerning the same is presumed to be true. The evidence under consideration was apparently based on such general reputation. It was not without probative force, and its weight was a question for the trial court. That court having determined the issue against appellant, the contention so urged by it is overruled. Cox v. State, 41 Tex. 1, 3–5; Stroud v. Springfield, 28 Tex. 649, 669, 670.

[3] The vendor's lien note sued on was by its terms due on February 1, 1916. On October 7, 1919, appellees herein executed an agreement with each other, recognizing the existence of the vendor's lien and extending the maturity of the indebtedness evidenced by said note to February 1, 1924. This agreement was duly acknowledged and filed for record in Madison county only. Subsequent to such record appellant purchased the property. The deed to appellant, as well as a number of prior deeds in the chain of title, recited that said land was situated in Grimes county and made no reference to the fact that a part of the same was situated in Madison county. The deed from Nellie Mosley and husband to J. D. Rogers, which recited the execution and delivery of the note sued on as a part of the consideration for the land therein conveyed, was recorded in Grimes county only. Appellant introduced evidence that it had caused the records in Grimes county to be searched before its purchase of said property, and that it found the note sued on was more than four years past due at the time, and that no renewal or extension of the same was of record in said county; that it was told that said note had been paid, and that it did not know that any part of said land lay in another county than Grimes. Based on these facts appellant contends that, because the renewal and extension agreement was not recorded in Grimes county as well as in Madison county, the court erred in foreclosing the vendor's lien on any of said land except such part of the same as actually lies in Madison county.

This contention requires the construction of the provision requiring renewals and extensions of notes secured by vendor's liens

and deeds of trust to be recorded, as found in article 5695 of the Revised Statutes as amended by the Legislature at its First Called Session in 1913 (Vernon's Sayles' Ann. Civ. St. 1914, art. 5695). Said article, so far as applicable, is as follows:

"When the date of maturity of either debt referred to in either of the foregoing articles is extended, if the contract of extension is signed and acknowledged as provided for in the law relating to the execution of deeds of conveyance by the party or parties obligated to pay such indebtedness as extended and filed for record in the county clerk's office in the county in which the land is situated, the lien shall continue and be in force until four years after maturity of the notes as provided in such extension, the same as in the original contract and the lien shall so continue for any succeeding or additional extension so made and recorded. The date of maturity set forth in the deed of conveyance or deed of trust or mortgage or the recorded renewal and extension of the same shall be conclusive evidence of the date of maturity of the indebtedness therein mentioned."

[4] Primarily, this article and article 5694 immediately preceding it are statutes of limitation. The purpose of the same is to limit the time within which vendor's liens and liens created by deeds of trust on land can be enforced. They operate on the lien as the same appears of record. Cathey v. Weaver, 111 Tex. 515, 242 S. W. 447. Under the operation of the same the lien still remains an incident of the debt secured thereby to the extent that it cannot be enforced after such debt is barred by limitation. Under such operation, however, the lien will become barred and unenforceable after the expiration of four years from the maturity of the debt as shown by the record, notwithstanding such debt may have been kept alive by an unrecorded renewal or extension. Hoya v. Self (Tex. Com. App.) 245 S. W. 424. The provision for recording extension agreements, while an essential element of the act, is merely incidental to the main purpose of prescribing a period of limitation applicable to all cases involving the enforcement of such liens. So far as the place of recording the extension agreement is concerned, the statute under consideration merely provides that the same shall be recorded in the county where the land is situated. It does not say that such agreement shall be recorded in every county in which any part of the land may be situated. It does not even say that the same shall be recorded in the county or counties in which the land is situated, as provided by article 6858, which requires a record of levies of writs of attachment on land. It does not constitute a complete and independent provision regulating the place of record of such agreements, such as is required before we would be justified in holding that it repealed by implication all other statutes in force at the time and prior there-

to which expressly prescribe where instruments affecting title to a tract of land lying in two or more counties shall be recorded. It is not sufficiently explicit or sufficiently comprehensive to justify the conclusion that it was intended to embrace the entire subject of recording extension agreements and to supersede with respect thereto all other statutes prescribing the place where instruments affecting the title to land shall be recorded. Rogers v. Waltrous, 8 Tex. 62, 65, 58 Am. Dec. 100; Stirman v. State, 21 Tex. 734, 735, 736; State v. I. & G. N. R. Co., 57 Tex. 534, 549, 550; Ex parte John Valasquez, 26 Tex. 178, 179.

Article 6824 of the Revised Statutes, in force at the time and still in force, authorizes the record of all instruments in writing, duly acknowledged or proved according to law, which concern any lands or tenements. Article 6827 of the Revised Statutes, then in force and still in force, as far as applicable, is as follows:

"All deeds, conveyances, mortgages, deeds of trust, or other written contracts relating to real estate, which are authorized to be recorded, shall be recorded in the county where such real estate, or a part thereof, is situated."

[5] These statutes in terms include all written instruments affecting land, and therefore necessarily include agreements extending the maturity of debts secured by liens on land by means of which such liens are preserved and continued as a charge against the same. It is a familiar rule of statutory construction that all statutes relating to the same general subject shall be considered and construed together, and that a later statute containing no repealing clause, as the statute here under consideration, should be so construed as to harmonize with other statutes existing at the time of its passage as far as reasonably possible, so that force and effect may be given to them all. If we construe the statute under consideration as applicable in terms only to cases where the entire tract of land affected by the extension agreement lies within a single county, and the general statutes with reference to the place of recording instruments affecting title to land as applicable to all cases where a single tract of land described in such an agreement is situated partly in two or more counties, there is no repugnance and this statute, as well as such other statutes, will be given full force and effect and all together will constitute an harmonious regulation of the matter of the place of recording written instruments affecting the title to land. We think they should be so construed, and therefore overrule the contention so urged by appellant. 36 Cyc. p. 1147, par. (II), and page 1151, par. (IV); Bryan v. Sundberg, 5 Tex. 418, 424; Neill v. Keese, 5 Tex. 23, 32, 51 Am. Dec. 746; Hanrick v. Hanrick, 54 Tex. 101, 109, 110; Bonner v. Hearne, 75 Tex. 242, 252, 12 S. W. 38.

[6] The original note executed by Rogers to Mrs. Nellie Mosley, and transferred by her and her husband to appellee R. A. Mosley, was by its terms due February 1, 1916. It provided for interest on the principal thereof at the rate of 10 per cent. per annum, payable annually, that all past-due interest should bear interest at said rate, and that the failure to pay any installment of interest when due should, at the election of the holder, mature the same. The extension agreement in evidence, after recitals fully identifying the note and land to be affected thereby, continued as follows:

"Whereas, said indebtedness, note No. 2 for $237.50, is about to mature, and will, in fact, mature on the 1st day of February, 1920, and then become due and payable and the vendor's lien thereunder will become enforceable by foreclosure proceedings against said described property, and J. D. Rogers, the maker of said indebtedness desirous of 'renewing and extending said indebtedness so as to make same mature on the 1st day of February, 1924:

"Now therefore, in consideration of the premises, we, the undersigned, R. A. Mosley, the present legal holder and owner of said indebtedness, and the said J. D. Rogers, the maker of said indebtedness, hereby covenant and agree that the maturity of said indebtedness and lien shall be extended from the said 1st day of February, 1920, to the 1st day of February, 1924. And the said J. D. Rogers, maker of said indebtedness, hereby agrees that he will promptly pay off and discharge said indebtedness and satisfy said lien at the new date of the maturity thereof above mentioned, according to its face, tenor and effect."

Since the maturity of said note is recited in said agreement as February 1, 1920, it appears that a prior extension had already been agreed to by the parties. They seem to have agreed upon October 1st of each year as the date of maturity of an annual installment of interest on said note, and, according to the indorsements on the back thereof, interest was paid annually thereon to October 1, 1920. No interest was paid after said date. The original petition in this case was filed on November 23, 1922. Appellant contends in effect that the original note was merged into the extension agreement and that such agreement became the actual contract between the parties, and that, inasmuch as such agreement fixed the maturity of said indebtedness as extended at February 1, 1924, and did not contain any provision for accelerated maturity, this suit was prematurely brought, and that the judgment appealed from should on that account be reversed and the cause remanded. This contention is presented for the first time on appeal.

The original date of maturity stipulated on the face of the note was independent of the provision for annual payment of interest

and the option in the holder to accelerate maturity in default of such payment. The statute under consideration in this case does not require that a new note be executed and substituted for the original in order to effect a valid extension thereunder. On the contrary, it contemplates, we think, merely a collateral agreement operating only on the stipulated date of maturity and not affecting, unless expressly so stated, any of the other terms or provisions of such note. The original date of maturity stipulated in the note being subject to the provisions for accelerated maturity therein contained, the new date fixed by the collateral extension agreement, in the absence of any stipulation therein to the contrary, is equally subject to such provisions. The contention so urged is overruled.

The judgment of the trial court is affirmed.