Jack F. VAUGHAN, Appellant,

v.

George A. ANDERSON et al., Appellees.

No. 8134.

Court of Civil Appeals of Texas,
Texarkana.

April 10, 1973.

Rehearing Denied May 22, 1973.

Robert Gooding, Clarksville, for appellant.

Austin Guest, Marion A. Lawson, Clarksville, for appellees.

CORNELIUS, Justice.

Appellant Jack F. Vaughan brought suit in trespass to try title against George Anderson and wife Saundra, Best Investment Company, Inc., J. A. Irwin, Rose B. Irwin, Arthur L. Perkins, W. T. Perkins and M. H. Perkins, seeking to recover title and possession of two tracts of land in the Reuben Giddens Survey of Red River County, Texas. Tract No. One contains 13.26 acres of land, and Tract No. Two contains 4.46 acres, and both tracts were described by metes and bounds in the petition.

The action was dismissed as to Rose B. Irwin. The other defendants answered by statutory plea of not guilty and limitations. The Andersons who claimed Tract No. Two pleaded the five and ten year statutes of limitations, and the remaining defendants who claim Tract No. One pleaded only the ten year statute.

A jury was waived and trial was to the court. Upon the conclusion of the evidence the trial court rendered judgment for appellee Anderson for the title and possession of Tract No. Two, and for appellees J. A. Irwin, Best Investment Company, Inc., Arthur L. Perkins, W. T. Perkins and M. H. Perkins for title and possession of Tract No. One. At appellant's request the trial court filed findings of fact

and conclusions of law which were to the effect that the appellees had matured title to the land in question by adverse possession. Appellant requested additional findings of fact, but they were not made.

The appellant has perfected this appeal, urging ten points of error dealing mostly with the claimed insufficiency, as a matter of law, of the evidence to sustain the trial court's findings of the maturing of title by adverse possession. Appellant also complains of the court's failure to find record title in him, and of the finding by the court that James Landrum, appellant's predecessor in title, never went into possession of the land deeded to him by J. A. Irwin.

At the trial, appellant introduced into evidence a regular chain of conveyances from Sovereignty to himself, and also from the common source of title, J. A. Irwin. The chain consists of 12 instruments, and it was stipulated by all parties that:

"It is stipulated by and between the plaintiff and all the defendants that Exhibits One through Twelve being offered by the plaintiff in this case are admissible in evidence, showing the title to the land from the Sovereignty of the soil down and into the plaintiff, and the common source of title as designated in the presentation of these instruments by agreement."

The appellees' evidence did not attack appellant's record title or superior title from the common source, but attempted to show title by adverse possession.

J. A. Irwin, the common source, had conveyed 20 acres of land, which included the two tracts in controversy, to James Landrum in October of 1946, and Landrum in July of 1970 conveyed the same to appellant. In July of 1963, some seventeen years after Irwin had conveyed the 20 acres to James Landrum, Irwin executed a deed to 18.44 acres (being the 20 acres he conveyed to Landrum, with Highway 37 excepted) to Best Investment Co., and in

November of 1964 Irwin conveyed 6 acres later surveyed to contain 4.46 acres, being Tract Two, to appellee Anderson. The deed from J. A. Irwin to James Landrum in 1946 reserved a vendor's lien and purchase money notes. Irwin testified that some two years after the deed to Landrum he, in a divorce settlement, conveyed all of his interest in the property (which in effect assigned the vendor's lien) to his former wife. There was no proof that the purchase money notes had or had not been paid, but from the record it is conclusively presumed that the notes and lien were barred by limitations prior to 1960. Yates v. Darby, 133 Tex. 593, 131 S.W.2d 95 (1939); Iola State Bank v. Mosley, 259 S.W. 227 (Tex.Civ.App.Waco 1924, error ref'd). There was no attempt by appellees to show voluntary rescission or abandonment of the sale from Irwin to Landrum.

From the pleadings and evidence in the record and from the court's findings, it appears that the principal question to be decided is whether there was evidence of probative force tending to prove the requisite elements of adverse possession.

 In a trial to the court, the trial judge's findings are the equivalent of a jury verdict on special issues and they will be sustained if they are supported by any evidence of probative force on the essential elements of recovery. Gulf, C. & S. F. Ry. Co. v. Fossett, 66 Tex. 338, 1 S.W. 259 (1886); Williams v. Planters' & Mechanics' Nat. Bank of Houston, 91 Tex. 651, 45 S. W. 690 (1898); 57 Tex.Jur.2d pp. 327, 365. In determining this question we must view the evidence in the light most favorable to the appellees, taking their evidence as true, and indulging every reasonable inference properly deducible therefrom in support of the judgment. Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696 (1914); Woodward v. Ortiz, 150 Tex. 75, 237 S.W.2d 286 (1951).

The evidence on adverse possession relating to the 4.46-acre tract claimed by ap-

pellee Anderson may be summarized as follows. Mr. Anderson, who lived in Dallas, got his deed from Mr. Irwin in November of 1964. He did not occupy the land, but went out to it two or three times a year for the first four or five years and after that when his two children were born he went out there about once a year; that at the most, Anderson went to the land no more than fifteen times in the space of five years; that when Anderson bought the place he and his wife went out to it in a camper and went over the place; that there was a little building on it about 12 x 14 feet in dimensions; that it was in disrepair and on that visit he took some lumber and repaired it and sealed it; that at another time in about 1968 or 1969, Anderson was there and the little building had been broken into and he again repaired it; that Anderson "posted" the land around 1968 or 1969 by placing "No Trespassing" signs on it, and that at some time he cleared a little around the building and cleared a driveway; that the tract was already fenced on two sides when Anderson got his deed; that he went down there once in either 1969 or 1970 to fence the other two sides, but it was too wet so he went back to Dallas and did not do any fencing; that the little building was only used for storage part of the time, once for cooking utensils and another time for some lumber; that the building was never occupied and was not built by Anderson, but by some unidentified person who had made an arrangement with Mr. Irwin; that the building had one door, no windows and no electricity, gas or water connections; that the land is heavily wooded and is not suitable for cultivation or running cattle unless cleared; that Anderson intended to move to Red River County and live on the land, but when their children were born that changed all of their plans; and that Anderson claimed the land and no one had ever disputed his claim to the land. There was also evidence that Anderson had paid the State and County taxes, and that J. A. Irwin had paid the school taxes.

The evidence as to the adverse possession of the 13.26-acre tract claimed by the remaining appellees may be summarized as follows: J. A. Irwin after 1960 sold portions of the tract to various persons on contracts of sale; that the first one was to a Mr. Thomas in about 1960; that Thomas cleared some timber, getting ready to build and moved some building material out there, but did not build anything; that Thomas paid his rent for seven months and then his wife decided it was too far out and they turned it back to Irwin; that Irwin then made a deal with a Mr. Ruff in either 1963 or 1964 for part of the 13 acres, and Ruff built a log cabin on the property and resided on it, although Irwin did not know for how long Ruff stayed there, or exactly when he made his deal with him; that Irwin next made a deal with a Mr. Perkins to sell him part of the property and authorized him to go on the property; that Perkins made some improvements, consisting of two little houses, and resided on the land; that Irwin made a deal with a Mr. Blankenship in January of 1969; that the arrangement with Perkins was in April of 1969; that he made an agreement with a Mrs. Goss in 1970 for part of the land, and she lived on the property for some unknown time; that J. A. Irwin sold part of the land to Best Investment Company in 1963, which was a holding company of his own; that there have been as many as four houses on the 13.26 acre tract; that persons traveling the highway can see the houses, and that persons have been seen in and around said houses at various times between 1960 and 1970; that during the year or so before suit, there was quite a bit of clearing of trees from the property; that J. A. Irwin came down to the land two or three times a year for ten or eleven years; that when he would come down he would pay his taxes and "show a piece of land;" that no one ever disputed Irwin's title to the 13.26 acres, except Mrs. Goss, who at one time made an adverse claim against him; and that Irwin exercised use and dominion over the land; and that neither Mr. Landrum nor the appellant ever talked to Irwin about the land until the filing of the suit.

As to both tracts involved in the suit, J. A. Irwin testified that after selling them to James Landrum in 1946, he got some tax statements from the County, and he thought ". . perhaps that I still owned" the property, so in around 1960 he again "took possession" of the property and paid the back taxes and "began to look after the property and start improving it and trying to sell it."

Some of the foregoing evidence was contradicted by witnesses and evidence presented by appellant, but we have summarized it in the most favorable light possible to the appellees.

■ Based upon the uniform decisions of our Supreme Court and other Courts of Civil Appeals in similar cases, we are compelled to hold that the appellees' evidence in this record, taking it as true and giving it every reasonable intendment, shows neither the *character* nor the *continuity* of use required by either the five or the ten year statute of limitations.

As concerns the 4.46-acre tract, the evidence at best shows only sporadic, occasional visits by the claimant to the land amounting to no more than three or four visits per year for the first four or five years and one a year thereafter. These visits were of overnight duration, or shorter. While on these visits the claimant on two occasions stored cooking utensils and building materials in the building and cleared a driveway and posted some "No trespassing" signs on the property. This activity, plus the payment of taxes and vague assertions of claim of title and lack of claim by others, are relied upon to show the acquisition of title by adverse possession.

To establish title by adverse possession it is essential that there be more than mere claim of title and lack of overt claim on the part of others. The claimant must establish continuous and uninterrupted culti-

vation, use or enjoyment of the land. Hardy v. Bumpstead, 41 S.W.2d 226 (Tex. Comm'n.App.1931, op. approved); Peden v. Crenshaw, 98 Tex. 365, 84 S.W. 362 (1904); Balli v. McManus, 311 S.W.2d 933 (Tex. Civ.App. San Antonio 1958, ref'd, n. r. e.); W. T. Carter & Brother v. Ruth, 275 S. W.2d 126 (Tex.Civ.App. Beaumont 1955, no writ).

◼ Our courts have uniformly held that sporadic, irregular and occasional use of land does not satisfy the statutes. W. T. Carter & Brother v. Ruth, supra; Hardy v. Bumpstead, supra; Overand v. Menczer, 83 Tex. 122, 18 S.W. 301 (Tex.Sup.1892); Pendleton v. Snyder, 5 Tex.Civ.App. 427, 24 S.W. 363 (1893, no writ); Hutcheson v. Chandler, 47 Tex.Civ.App. 124, 104 S.W. 434 (1907, no writ); Krider v. Wintermann, 108 S.W. 452 (Tex.Civ.App. Amarillo 1937, no writ); 2 Tex.Jur.2d 148.

For example, it has been held that the storing of household goods and farm equipment on the land and occasional and even regular overnight visits to the land by the claimant are not sufficient. Hardy v. Bumpstead, supra. Likewise, a showing of the use of the land for storage, the occasional grazing of cattle thereon, and occupancy of a house on the land for four months each year has been held not sufficient. Pendleton v. Snyder, supra. The grazing of cattle during the grass season only and the storing of lumber and a buggy and a mower on the land, as well as similar acts, have been held to be insufficient. Bemrod v. Wright, 273 S.W. 938 (Tex.Civ.App. Amarillo 1925, no writ); O'Hanlon v. Morrison, 187 S.W. 692 (Tex.Civ.App. Amarillo 1916, no writ). Even the maintenance of fences around the land and the placing of other improvements on the land, unaccompanied by actual occupancy or open use, does not constitute such adverse possession as will satisfy the statutes. Urschel v. Garcia, 164 S.W.2d 804 (Tex.Civ.App. San Antonio 1942, ref. w.o.m.); Niday v. Cochran, 93 S.W. 1027 (Tex.Civ.App.1905, no writ); Mitchell v. Burleson, 466 S.W.2d 646 (Tex.Civ.App., Beaumont 1971, ref'd, n.r. e.). Nor is it sufficient to show occasional camping and fishing on the land. W. T. Carter & Brother v. Ruth, supra; Nona Mills Co. v. Wright, 101 Tex. 14, 102 S.W. 1118 (1907).

◼ It is true that the character of use required varies with the nature of the land and its adaptability to a particular use, but even so, whatever the nature and adaptability of the land, the use must constitute actual and visible appropriation of the land and it must be continuous and unbroken. Hardy v. Bumpstead, supra; W. T. Carter & Brother v. Ruth, supra. Even regular and consistent use every year for the statutory period in a manner peculiarily adapted to the nature of the land, is not sufficient if there are substantial periods of time when the land is not in actual use. Winchester v. Porretto, 432 S.W.2d 170 (Tex.Civ.App. Houston, 1st, 1968 error ref'd n. r. e.).

◼ As concerns the 13.26 acre tract, the evidence at its best shows only the occasional occupancy of undetermined portions of the land by several tenants or prospective purchasers of J. A. Irwin, and erection of three or four houses on undesignated portions of the same, together with vague and general statements that these parties "went into possession" or "lived there." It is not shown what was the nature of their claims or the extent of their possession, if any, or the dates of the inception and termination of their occupancy, or the length of their stay, or whether or not they made any actual use of the land.

◼ When claiming title by adverse possession through tenants or others using the land by permission of the claimant, there must be continuity of possession between the several tenants. Phillipson v. Flynn, 83 Tex. 580, 19 S.W. 136 (1892); Overand v. Menczer, supra; Taylor v. Dunn, 108 Tex. 337, 193 S.W. 663 (1917); Balli v. McManus, supra; Hardy v. Bumpstead, supra; Urschel v. Garcia, supra;

Cook v. Winter, 207 S.W.2d 145 (Tex.Civ. App. Amarillo 1947, ref'd n. r. e.). The claimant has the burden to show that there was no break in the possession by the tenants; or if there was a break, that it was only for a reasonable time for the changing of tenants. Urschel v. Garcia, supra; Didier v. Woodward, 232 S.W. 563 (Tex. Civ.App. Amarillo 1921, no writ); Taylor v. Dunn, supra; Balli v. McManus, supra; Bemrod v. Wright, supra. If the claimants' evidence shows breaks in the possession, the court cannot assume those breaks to have been of such short duration as not to defeat the requisite continuity of possession. Dunn v. Taylor, 102 Tex. 80, 113 S. W. 265 (1908); Hardy v. Bumpstead, supra.

The evidence of the appellees here contains various statements and assertions that the appellees or other persons "retook possession," "went into possession," "were in possession," and the like, but it has been uniformly held that such statements, as well as statements that a person "made use of all of the land" are pure conclusions of law and are no evidence whatsoever of the facts of adverse possession, and gaps in possession cannot be bridged by such assertions. Urschel v. Garcia, supra; Moore v. Wooten, 280 S.W. 742, 283 S.W. 153 (Tex.Comm'n.App., Opin. apprvd by Tex. Sup.); W. T. Carter & Brother v. Ruth, supra.

The testimony and evidence seeking to show compliance with Vernon's Tex.Rev.Civ.Stat.Ann. Articles 5509 and 5510 (1966) cannot be vague, confusing and indefinite, consisting of mere conclusions of law and generalities, but must be clear and satisfactory. Cook v. Winter, supra; Urschel v. Garcia, supra. Presumptions will not be indulged in to establish such a claim, but the claimant must discharge his burden by submitting evidence of probative force on every essential element. Durham v. Houston Oil Company of Texas, 222 S.W. 161 (Tex.Comm.

App.1920, op. approved); Cook v. Winter, supra.

Appellees urge that since this was a trial to the court without a jury we must affirm the trial court's judgment if it is supported by evidence on any theory of the case. This is correct when the trial court does not file findings of fact and conclusions of law, but here the trial court made findings and conclusions. Express findings made by a trial judge cannot be extended by implication to cover further independent facts. Duncan v. Willis, 157 Tex. 316, 302 S.W.2d 627 (1957); Tex. Jur.2d Vol. 41b, p. 868. One of the advantages to an appellant in requesting and securing findings of fact and conclusions of law from the trial court is the avoidance of findings that would otherwise be implied to support the judgment. Duncan v. Willis, supra; Texas Rules of Civil Procedure, rule 279.

For the reasons stated, we conclude that the appellees did not adduce evidence tending to show either the character or continuity of use required by Tex.Rev.Civ.Stat. Ann. Arts. 5509 and 5510, and therefore the trial court erred in rendering judgment in favor of appellees.

Appellant proved a record title from the common source. Since such record title was not defeated by the requisite adverse possession, judgment should have been rendered for the appellant. The trial court also found as a fact that James Landrum, appellant's predecessor in title, never went into possession of the 20-acre tract deeded to him by J. A. Irwin in 1946. There is no evidence to support such a finding, and even if supported by evidence, it would not be determinative of any issue, since actual possession is not necessary to a valid record title. Whitehead v. Foley, 28 Tex. 268.

The judgment of the trial court is reversed and judgment is here rendered for appellant for the title and possession of the two tracts of land described in the appellant's petition.

## 334

### ON MOTION FOR REHEARING

Appellees have raised several matters in their amended motion for rehearing which we deem necessary to briefly discuss.

Appellees contend that we erred in "separating the 20 acre tract in question into two tracts of 13.26 acres and 4.46 acres each, when determining there was no evidence to support appellees' claims of adverse possession as against the plaintiff's claim of record title to the 20 acre tract." The plaintiff (appellant) did not seek to recover title to the 20 acre tract. His petition described the 13.26 acre tract by metes and bounds as Tract No. 1 and the 4.46 acre tract by metes and bounds as Tract No. 2, and he sought to sustain record title to each tract, so described. Likewise, appellees Anderson and wife answered claiming title to the 4.46 acre tract described as Tract No. 2, and the remaining appellees answered claiming title by adverse possession to "the lands and tenements claimed in plaintiff's petition . . ."

■ Appellees then assert that we erred in "overlooking the fact of the deed to the State of Texas for a right of way," the use thereof, and facts "reasonably to be inferred therefrom." Title to the right of way was not involved in the suit, but the deed was not overlooked. It is not in evidence, but there was testimony about the conveyance, and there is a plat of the right of way contained in the statement of facts. At the time Mrs. Irwin conveyed the right of way, neither she nor J. A. Irwin had record title to the land. The right of way conveyance, while it may have been evidentiary of her claim of title, could not supply the missing essential elements of use and possession which are required to establish title by adverse possession.

■ Appellees state that the record does not show that any of the exhibits were offered or received in evidence. The statement of facts contains exhibits 1 through 12 of the appellant, being his chain of title from the sovereignty and from the common source. Appellees stipu-lated that these 12 exhibits *"being offered by the plaintiff* in this case, *are admissible* in evidence showing the title to the land from sovereignty of the soil down in to the plaintiff and the common source of title as designated *in the presentation of these instruments* by agreement." Not only are the exhibits listed and described, but copies are contained in the statement of facts. The statement of facts is certified by the reporter to be correct and complete, and it is signed by the attorneys for appellees as being a "full, true, correct and complete" statement of facts in the cause. Statements in appellant's brief that these instruments were received into evidence are nowhere challenged by appellees. In the face of these facts, it can hardly be contended that these deeds were not in evidence.

■ Appellees next say that the judgment does not appear to be final, because it does not mention Saundra Anderson or M. H. Perkins. Saundra Anderson was appellee George Anderson's wife. M. H. Perkins was named as an original defendant. Saundra Anderson answered with her husband. M. H. Perkins did not answer and the record does not reveal whether or not he was served with citation. In any event, however, the Supreme Court has settled this point contrary to appellees' contention in the case of North East Independent School District v. Aldridge, 400 S.W.2d 893 (Tex.Sup.1966).

Appellees complain that, in support of our holdings we have cited cases decided on "insufficiency of the evidence" or "against the great weight and preponderance of the evidence," whereas, our decision is one of "no evidence." The distinction is fine in an adverse possession case, since a substantial period of time is involved in which there must be consistent acts of possession of a certain type or character. When there are gaps in the possession or a lack of the type of possessory acts required, courts sometimes say that the acts or the possession is "insufficient." Usually what is meant is that such acts are "insufficient in law" or "insuffi-

cient as a matter of law," which is the same as "no evidence." When we say that appellees' evidence showed neither the character nor the continuity of use required by the statutes, we mean that the evidence introduced was insufficient as a matter of law. The cases cited to sustain our conclusions were not intended in all events to be in point factually with the case at bar, but they were cited on the statements of law contained therein which we deemed were pertinent to the particular question then being discussed.

Finally, appellees point out that appellant's chain of title shows that James H. Landrum reserved an undivided one-half of the oil, gas and other minerals when he conveyed the land in question to appellant. This being true, the opinion is modified to render judgment for appellant for the title and possession of the surface of the land described in his petition, and an undivided one-half interest in the oil, gas and other minerals in and under said land.

Except for the modification mentioned above, the amended motion of appellees for rehearing is overruled.