## MOORE et al. v. WOOTEN et al.[*] (No. 542–4282.)

(Commission of Appeals of Texas, Section B. Feb. 10, 1926.)

**1. Executors and administrators ⊚⇒2.**

Validity of acts of administrator must be determined by law in force at time of administration of estate.

**2. Courts ⊚⇒202(1)—Probate Act held to form complete system of probate procedure (Act Aug. 15, 1870; Laws 1870, c. 81, §§ 25, 27, 38, 60, 121, 132, 133, 136, 233).**

Probate Act Aug. 15, 1870, formed complete system of probate procedure, and was intended to afford mode of proceeding applicable to all cases, in view of sections 25, 27, 38, 60, 121, 132, 133, 136, 233.

**3. Executors and administrators ⊚⇒1—Administratrix in individual capacity held a stranger, though surviving widow of deceased (Act Aug. 15, 1870; Laws 1870, c. 81).**

Under Probate Act Aug. 15, 1870, administratrix of an estate in her individual capacity was a stranger thereto, though she was surviving widow of deceased.

**4. Courts ⊚⇒202(1)—Proceeding in probate court is in rem.**

Proceeding in probate court is one in rem.

**5. Executors and administrators ⊚⇒72—Inventory of administrator is prima facie evidence that property described therein belongs to estate of deceased (Act Aug. 15, 1870; Laws 1870, c. 81, § 121).**

Probate court had jurisdiction, under Probate Act Aug. 15, 1870, of all property described in inventory filed under oath of administrator, and such inventory was, under section 121, the prima facie evidence that property belonged to estate of deceased.

**6. Executors and administrators ⊚⇒72—Inventory held subject to be assailed by showing that property did not belong to estate, or that property belonging to estate was not included (Act Aug. 15, 1870; Laws 1870, c. 81, § 121).**

Inventory filed by administrator under Probate Act, Aug. 15, 1870, § 121, being prima facie evidence only that property belonged to estate of deceased, *held* subject to be assailed by any one having interest in subject-matter by showing either that property did not belong to es-

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Rehearing denied 282 S. W. —.

tate, or that property belonging to estate was not included.

**7. Executors and administrators ⚙═➤329(1)—Administrator, upon qualifying and filing inventory, acquires right to dispose of either community or separate lands.**

Administrator, upon qualifying and filing inventory, acquires right to dispose of either community or separate lands of deceased, providing deceased is a feme sole or a male person over the age of 21 years.

**8. Judgment ⚙═➤475.**

Probate court is one of general jurisdiction, and its judgments import verity and cannot be collaterally attacked.

**9. Executors and administrators ⚙═➤388(1)—Where probate court approves sale of lands stated in inventory, purchaser acquires whatever title intestate had.**

Where order of probate court has been made approving sale of lands stated in inventory, purchaser acquires whatever right intestate had therein, whether lands so sold be separate or community estate.

**10. Executors and administrators ⚙═➤329(1)—Land may be sold under order of probate court to pay debts or expenses of administration, whether chargeable against separate or community estate (Act Aug. 15, 1870; Laws 1870, c. 81).**

Land could, under Probate Act Aug. 15, 1870, be sold by order of probate court to pay debts or expenses of administration, whether debts were chargeable against separate estate or against community estate, if person whose estate was being administered would have been liable for debts had he been alive.

**11. Executors and administrators ⚙═➤329(1)—Land may be sold to pay expenses of administration whether separate or community estate (Act Aug. 15, 1870; Laws 1870, c. 81).**

Land could, under Probate Act Aug. 15, 1870, be sold by order of probate court to pay expenses of administration, whether property sold was separate or community estate.

**12. Executors and administrators ⚙═➤333—Probate court held to have exclusive jurisdiction to determine finally every fact necessary to authorize sale of land (Act Aug. 15, 1870; Laws 1870, c. 81).**

Under Probate Act Aug. 15, 1870, probate court had exclusive jurisdiction to determine finally every fact necessary to authorize sale of land.

**13. Executors and administrators ⚙═➤137—Administrator of estate must acquire from probate court specific order to dispose of property belonging to intestate (Act Aug. 15, 1870; Laws 1870, c. 81).**

Administrator of an estate, under Probate Act Aug. 15, 1870, relating to administration of estate, as distinguished from administration of a community estate or by virtue of will giving plenary powers to executor, was required to acquire from probate court specific order to dispose of property belonging to intestate.

**14. Trial ⚙═➤136(3)—It is province of court to construe and determine legal effect of instruments in writing.**

It is province of court and not jury, or court sitting as jury, to construe and determine legal effect of instruments in writing.

**15. Evidence ⚙═➤385—If intention of parties to written instrument can be gathered from instrument, its terms cannot be contradicted.**

In construing a written instrument, intention of parties thereto must control, and if intention can be gathered from instrument itself, its terms cannot be contradicted.

**16. Evidence ⚙═➤82—Presumption obtains that administrator inventoried all property belonging to intestate, in absence of direct attack.**

Where no direct attack is made upon inventory of administrator, presumption obtains that administrator has inventoried all property belonging to intestate.

**17. Evidence ⚙═➤89—Presumption cannot stand against unimpeached positive evidence.**

Presumption merely cannot stand against unimpeached positive evidence, and cannot be indulged in opposition to facts which show that facts sought to be established by presumption can have no existence.

**18. Evidence ⚙═➤89.**

Presumption that state of things once shown to exist continues obtains only in absence of proof to the contrary.

**19. Executors and administrators ⚙═➤388(2)—Administratrix, by selling interest of deceased in land, held to have vested purchaser with entire interest belonging to estate, whether community or separate estate (Act Aug. 15, 1870; Laws 1870, c. 81).**

Administratrix by selling under order of probate court, under Probate Act Aug. 15, 1870, undivided interest of deceased in land set forth in inventory, *held* to have vested purchaser with entire interest belonging to estate, whether community or separate estate of deceased.

**20. Appeal and error ⚙═➤1094(1)—Supreme Court is without power to review holding of Court of Civil Appeals as to facts, unless palpably and flagrantly wrong.**

Unless holding of Court of Civil Appeals upon facts is so palpably and flagrantly wrong as *to amount to refusal to apply established law* of state, Supreme Court is without authority to review it.

**21. Adverse possession ⚙═➤112, 114(1).**

One who seeks to establish title to land by limitation assumes burden of proof, and proof must be clear and satisfactory.

**22. Appeal and error ⚙═➤1094(1)—Supreme Court will not disturb ruling of Court of Civil Appeals as to diligence of one moving for new trial where situation justified ruling.**

Supreme Court will not disturb holding of Court of Civil Appeals that motion for new trial on ground of newly discovered evidence was properly denied for lack of diligence,

---

⚙═➤For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

where record shows existence of situation amply justifying such ruling.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Suit by Mrs. F. E. Wooten and others against E. F. Moore and others. Judgment for plaintiffs was affirmed by the Court of Civil Appeals (265 S. W. 210), and defendants bring error. Reversed and rendered.

Baker, Botts, Parker & Garwood, of Houston, and E. B. Pickett, Jr., of Liberty, for plaintiffs in error.

A. L. Kayser, of Conroe, and J. Llewellyn, of Liberty, for defendants in error.

SHORT, J. W. J. Wooten was the only child and heir at law of his father, W. R. Wooten, and his mother, Sarah J. Wooten, who were divorced by the district court of Walker county in the year 1855. Afterwards W. R. Wooten married Rosa McGee, who had been previously married and who had one son by the name of Daniel C. McGee. This marriage took place in the year 1856, and in 1860 F. D. Thornton conveyed to W. R. Wooten 1,500 acres of land out of the Melina Whittington survey in Liberty county, Tex. W. R. Wooten died in Walker county, Tex., intestate, May 18, 1870, leaving surviving him his widow, Mrs. Rosa McGee Wooten, and his son by his first marriage, W. J. Wooten, as his heirs at law.

On March 29, 1871, E. R. Wooten, the widow of W. R. Wooten, deceased, was duly appointed by the probate court of Walker county as administratrix of the estate of her deceased husband, and duly qualified by giving the bond and taking the oath required of her by the law. Appraisers were appointed by the probate court of Walker county, and an inventory was presented and filed in said court on May 11, 1871. In this inventory appears the following recitation:

"Inventory of real property belonging to the estate of W. R. Wooten: A half interest in a tract of land lying in Liberty county, containing 1,500 acres of land."

This inventory also included a list of personal property belonging to the Wooten estate, the nature of which as described in the inventory is such as to compel the conclusion that the personal property was belonging to the community estate of W. R. Wooten and his surviving wife, the administratrix, but the inventory does not indicate otherwise that either the personal property or the real estate belonged either to the community estate or to the separate estate of W. R. Wooten, deceased. It was shown that all the records of Liberty county were destroyed by fire in the year 1874.

On July 21, 1875, an order was made by the probate court of Walker county in the estate of W. R. Wooten, deceased, directing the sale of "an undivided half interest in and to a tract of land situated in Liberty county, Texas, a part of the Melina Whittington H–RE, the same conveyed by F. D. Thornton to decedent by deed dated November 17, 18 ——." On December 2, 1875, the probate court of Walker county, in the estate of W. R. Wooten, deceased, approved the sale made by the administratrix by virtue of the report of sale to one L. A. Abercrombie of this one-half undivided interest in the 1,500 acres in Liberty county, a part of the Whittington survey. This order was based on the report made to the probate court of the sale aforesaid of the land aforesaid by E. R. Wooten, administratrix of the estate of W. R. Wooten, deceased, on December 2, 1875. On April 6, 1876, the administratrix of the estate of W. R. Wooten executed a deed conveying to the purchaser an undivided interest in the tract of 1,500 acres situated in Liberty county, Tex., in which conveyance the orders above mentioned were recited. On January 26, 1881, E. R. Wooten and her son, Daniel C. McGee, executed a conveyance to L. A. Abercrombie of "a one-half undivided interest in and to our one-half undivided interest in a certain tract containing fifteen hundred acres more or less, situated in Liberty county, Texas, and a part of the Melina Whittington survey, the said Abercrombie being already the owner of one-half of said 1,500-acre tract, and this deed is intended to convey to him one-half of the remaining half of said 1,500 acre tract, thereby investing him with the title to three-fourths of said 1,500 acre tract." On April 21, 1883, E. R. Wooten and her son, Daniel C. McGee, conveyed to D. D. Alston "all our right, title and interest in the same, being a ¼ undivided interest in a certain tract containing fifteen hundred acres more or less, situated in Liberty county, Texas, and a part of the Melina Whittington survey, L. A. Abercrombie being the owner of the three-fourths interest therein." On July 20, 1883, D. D. Alston executed to L. A. Abercrombie a conveyance of the same property, described in substantially the same language, which he acquired from E. R. Wooten and Daniel C. McGee.

The plaintiffs in error assert ownership of the 1,500 acres of land by virtue of the instruments above mentioned and the facts stated, which are undisputed, since their claim of ownership connects itself with the title evidenced by the instruments mentioned. On the 7th of June, 1920, this suit was filed by the wife and children of W. J. Wooten, who had died intestate August 31, 1880, in the form of trespass to try title and for damages, asserting an ownership in the 1,500 acres of land to the extent of an undivided one-fourth interest, claiming that the said W. J. Wooten had inherited from his father, W. R. Wooten, this undivided one-fourth interest in this 1,500 acres, which had not been

sold by his administrator or otherwise disposed of by any one having the lawful authority to convey it, and asserting that the 1,500 acres of land was community property of W. R. Wooten and his wife, Rosa McGee Wooten, one-half of which upon the death of W. R. Wooten descended and vested in W. J. Wooten and the other one-half in Rosa McGee Wooten, charged with the community debts of W. R. and Rosa McGee Wooten, and in effect basing their claim to the one-fourth interest upon the proposition that the deed of the administratrix to Abercrombie conveying an undivided one-half interest in the 1,500 acres, when properly construed, meant that one-half of the W. R. Wooten's interest in the land only was conveyed and the other one-half which was conveyed belonged to his wife, leaving unsold in said 1,500 acres of land belonging to the estate of W. J. Wooten, deceased, an undivided one-fourth interest, and leaving to Rosa McGee Wooten a like interest. The plaintiffs in error pleaded a general denial, not guilty, and the statutes of 3, 5, and 10 years' limitation, and also filed a cross-action seeking to recover all of the land except 207 acres in the southeast corner. The case was tried before the court without the intervention of a jury, and judgment rendered in favor of the defendants in error for an undivided one-fourth interest in the land sued for, and $2,000 as damages on account of timber cut, and also rendered judgment against the plaintiffs in error upon their cross-action. A motion for new trial having been filed and overruled, and an appeal having been perfected to the Court of Civil Appeals, the judgment of the trial court was affirmed, and, upon application by the plaintiffs in error, the Supreme Court granted a writ of error, and the case has been referred to this section of the Commission of Appeals for disposition.

The first assignment of error calls in question the correctness of the opinion of the Court of Civil Appeals in holding that the administratrix's deed to L. A. Abercrombie only conveyed an undivided one-fourth interest in the land belonging to the estate of W. R. Wooten, deceased, and that the defendants in error were entitled to recover the remaining one-fourth apparently belonging to said estate.

The proceedings that settle and distribute the estate of a deceased person is called an administration. Act of August 15, 1870 (Laws 1870, c. 81) § 24. "The term estate of a deceased person, includes all the rights and obligations of the deceased, as they existed at the time of his decease, together with all that has accrued thereto since, and the new charges to which it becomes subject." Section 25 of the same act. When a person dies, the estate vests in the persons entitled under the law regulating wills and the descent and distribution of estates; but,

upon the grant of letters testamentary or of administration, the executor or administrator becames entitled to the possession of it, for the purpose of administration and for that purpose only. Section 27 of the same act. All persons who are interested in the administration are necessary parties thereto, and include distributees, creditors and the administrator. Sections 38 and 60 of said act.

Section 121 of the Act of August 15, 1870, made it the duty of an administrator, within 30 days after taking the oath and giving the bond, to return a true and perfect inventory of all the real and personal property, books, title papers, other papers, and evidences of debt due, or to become due, belonging to the estate.

Section 132 of the same act required the inventory to be filed, and thereafter five days, without objection having been made, to be entered of record; while section 133 made it the duty of the court, at each term thereof, to inquire whether all inventories had been duly returned and to cite and compel all delinquents to comply with the law with relation thereto, and the following section authorized the judge, of his own motion or on motion of any person interested in the administration, to cite the administrator to show cause why a more perfect inventory should not be returned by him.

Section 136 declared that inventories and appraisements should be evidence in any suit against the executor by any person interested in the administration, but should not be conclusive, if it be shown that the property, or any part thereof, was sold in good faith for less than the appraisement, or did not belong to the estate.

Section 233 of the same act authorized the court, on application of the administrator, to enter an order for the sale of enough real property to pay debts and expenses of administration. The undivided one-half interest in the 1,500 acres of land was shown to have been sold on a credit of six months, from which it appears that the purpose of selling this property was to pay creditors generally of the estate or to provide for the payment of the expenses of the administration, since the law only permitted property under such circumstances to be sold upon other terms when ordered for the satisfaction of a mortgage or other lien on the particular property.

[1-6] These provisions of the law are cited specifically for the reason they were in force at the time the transactions under discussion occurred, and the validity of the acts of the administrator of the estate of W. R. Wooten must be determined by the provisions of this law. However, the origin of our probate laws, including the law of 1870, is discussed at length in Thompson v. Craig, 24 Tex. 592, to which we refer with approval, merely remarking that they are intended to

form a complete system and as such to afford a mode of proceeding applicable to all cases. Ansley v. Baker, 14 Tex. 612, 65 Am. Dec. 136. According to this system, the administrator of an estate in his individual capacity is a stranger thereto, and it is not a material fact in this case that the administratrix of the estate of W. R. Wooten happened to be a surviving widow, and especially is this true since a proceeding in the probate court is one in rem, and the court has jurisdiction of the property described in the inventory filed under oath by the administrator, which inventory is prima facie evidence that the property belonged to the estate of the deceased. The widow and son of W. R. Wooten were parties as distributees of his estate remaining after the close of the administration. This inventory prima facie describes and identifies all the property belonging to the estate, though this prima facie fact is subject to be assailed by any one having an interest in the subject-matter, either by showing that property contained in the inventory does not belong to the estate either in whole or in part, or that property belonging to the estate has not been included in the original inventory. In the absence of such proceeding, according to section 121 of the Act of August 15, 1870, the inventory originally filed is prima facie a true and perfect inventory of all property belonging to the estate. White v. Shepperd, 16 Tex. 163; Johnson v. Morris, 45 Tex. 465; Clapp v. Engledow, 72 Tex. 255;[1] Devine v. United States Mortgage Co. (Tex. Civ. App.) 48 S. W. 585; Carroll v. Carroll, 20 Tex. 731. Necessarily, if the inventory contained all of the property belonging to the estate, it included the community estate as well as the separate estate of the deceased. In Carlton v. Goebler, 58 S. W. 829, 94 Tex. 93, the Supreme Court of this state uses this language:

"It may be doubted whether the law would tolerate an administration of one-half of the community while there were valid debts against the whole still unsatisfied."

[7] While it is true that upon the death of one spouse the title of the community lands vests in the heirs, and while it is equally true that upon the death of an individual his or her separate estate vests in the heirs of such deceased person, still it is equally true that the administrator, upon qualifying as such and filing an inventory, acquires the right to dispose of either the community or separate lands of such deceased person, provided, of course, that the deceased person is either a feme sole or a male person over the age of 21 years.

[8-14] The probate court is one of general jurisdiction, and its judgments import verity and cannot be collaterally attacked. Weems v. Masterson, 15 S. W. 590, 80 Tex. 41. Where an order of the probate court has been made approving the sale of lands stated in the inventory, the purchaser acquires whatever title the intestate had therein, and it is not at all material whether the land so sold be the separate or the community estate. The authority to sell is based upon the fact that a necessity therefor existed on account of debts or expenses of administration, and it is not material to determine whether the debts were chargeable against the separate estate or against the community estate, always providing, however, that the person whose estate is being administered would have been liable for the debts had he been alive. It is equally true that it is not material to determine whether the property sold was separate or community if the necessity to sell arose out of the fact that there were expenses of administration to be paid. The probate court had the exclusive jurisdiction to determine finally every fact necessary to authorize a sale. Under the Constitution of 1869, art. 5, § 7, the district court was invested with the general powers of a probate court, and the administration of the estate of W. R. Wooten, deceased, was conducted under the law of August 15, 1870, enacted in pursuance of the provision of the Constitution of 1869.

There has been no direct attack made upon the appropriate proceedings involved in this case. Both the plaintiffs in error and the defendants in error rely upon their validity. We have seen that the wife of W. R. Wooten, by becoming the administratrix of the estate of her deceased husband, occupied the same relation to the estate as though she had never been his wife except in the capacity of a distributee. In truth, the administrator as such of an estate, under the general laws relating to an administration of estates, strictly speaking, as contradistinguished from the administration of a community estate or by virtue of will giving plenary powers to the executor, must acquire from the probate court a specific order to dispose of the property belonging to the intestate. It is the court which really acts through its agent, the administrator, in making such disposition, and a court of record, as the probate court is, can only evidence its acts by the making of a record in the manner prescribed by the law. The testimony in this case shows that the probate court in administering this estate did this. It first appointed the surviving widow of W. R. Wooten the administratrix, fixed the amount of her bond, and required her to give it and to file an inventory of the property belonging to the estate. Thereafter it made an order directing her to sell the only land embraced in the inventory, and, upon a report of the sale having been made in accordance with the law by the administratrix, it approved the sale, and ordered the execution and delivery of a deed to the purchaser. Whatever the purchaser purchased is evidenced by the record of these proceedings, all of which is to be found in

---

[1] 10 S. W. 462.

the statement of facts. It is the province of the court, and not the jury or the court sitting as a jury, to construe and determine the legal effect of instruments of writing. Shepherd v. White, 11 Tex. 346; Little v. Birdwell, 21 Tex. 597, 73 Am. Dec. 242.

[15] Perhaps the most fundamental rule of construction of written instruments is that the intention of the parties thereto must control. Primarily and most frequently this intention is gathered from the instruments themselves, and where such intention is manifested in the instruments, no sort of contradiction will be permitted.

In the case of Johnson v. Morris, 45 Tex. 465, our Supreme Court uses this language:

"The statute makes the inventory of the estate returned by the administrator prima facie evidence of the property of the estate in his hands."

[16] We have seen that the law makes it the duty of the administrator to inventory all of the property belonging to the intestate. The law presumes that this duty was discharged by the administratrix in this case; no direct attack having been made upon it. Whether the undivided one-half interest in the 1,500 acres of land was the separate property or the community property of W. R. Wooten or whether it was partly separate and partly community, the fact remains that this undivided one-half interest was *all* of this land which belonged to the estate of W. R. Wooten, deceased, whether separate or community. Its sale by the probate court evidenced the fact that *all* of this property belonging to the estate of W. R. Wooten was sold, and, all having been sold, there was nothing left for the heir. It may have been the separate estate of W. R. Wooten, and still the court, having acquired jurisdiction of all of the land belonging to the estate, and having ordered it sold and approved the sale, this separate estate passed to the purchaser. It may have been the community estate of W. R. Wooten and his surviving wife, but the probate court having acquired jurisdiction of all the interest which W. R. Wooten had in this land set forth in the inventory, and, having ordered it sold and the sale approved, the purchaser thereby acquired whatever interest the estate of W. R. Wooten had in the land. The inventory filed by the administratrix and approved by the court gave the court jurisdiction to dispose of the property embraced in the inventory. All of the instruments introduced in evidence evidenced the intention of the parties to those instruments to convey to the purchaser all the interest in the undivided one-half of the 1,500 acres of land belonging to the estate of W. R. Wooten, deceased. There is left no room to indulge in presumption. By an inspection of these instruments, their meaning is shown to be clear. The parties thereto evidently intended to deal with *all* of the

interest which the estate of W. R. Wooten, deceased, had in these lands.

[17, 18] Presumptions, merely, cannot stand against unimpeached positive evidence, and cannot be indulged in opposition to facts which show that the facts sought to be established by presumption can have no existence. Larquen v. State, 76 Tex. 328. While it is true that a state of things once shown to exist is ordinarily presumed to continue, this is true only in the absence of proof to the contrary. This proceeding did not involve a contest of the title to this land. Hamm v. Hutchins, 46 S. W. 873, 19 Tex. Civ. App. 209; Wadsworth v. Chick, 55 Tex. 241. In fact, the title was not involved in any way. It was purely a proceeding in probate, specifically authorized by law, and this proceeding was strictly followed. Its purpose was to settle and distribute the estate of W. R. Wooten, and by article 5486, Paschal's Digest, which is the twenty-fifth section of the Act of August 15, 1870, the administration of this estate included. *all* of the rights and obligations of W. R. Wooten as they existed at the time of his decease, together with all that had accrued thereto since, as well as the new charges to which it became subject. Among these new charges was the expenses of his administration. It might be conceded that there were no community debts in existence at the time the sale was made, as well as that there were no separate debts, and, yet, if there were any unpaid expenses of the administration, and the court saw fit to order the sale of the land to pay these expenses the sale thereof was valid, and the purchaser acquired *all* the interest belonging to the estate of W. R. Wooten, deceased, by reason of such proceedings. These are facts proven by the proceedings duly entered of record, and therefore left no room for any presumption at variance with the legal effect of such facts.

The question is not before us whether any portion of the 1,500 acres of land was the separate property of Rosa McGee Wooten. If any part of this land was the separate estate of the wife, then in that event it would not be charged with any of the community debts or any part of the expenses of the administration of the estate of W. R. Wooten, deceased; but the contrary rule is applicable to the estate of the husband. Whether the undivided one-half interest in the 1,500 acres was a part of his separate estate or a part of the community of himself and wife, it was. nevertheless charged, not only with all the debts of the community and all of his separate debts, but as well with all the expenses of administration in this proceeding. Since *all* of the estate of W. R. Wooten was charged with the community debts as well as the expenses of administration, and this estate, of course, for these purposes included the community interest of the wife, if in fact she had any community interest, still the

administrator's sale to Abercrombie would not pass any interest of the wife arising out of the possible fact that it was a part of her separate estate. But, as has been said, it was apparently the community estate of the husband and wife, and as such the administrator's sale prima facie extinguished *all* of the interest of the estate of the husband, either as a part of the community or of his separate estate, and as the inventory is prima facie evidence of the fact that *all* the interest which the estate of the husband had in this 1,500 acres of land was placed under the jurisdiction of the probate court and by it sold, and, the burden of overturning this prima facie case not having been discharged, it follows that there was nothing left for his heirs to inherit in any portion. The sale of an undivided half interest is no more indefinite than the sale of the north, south, east, or west half. The extent of the interest, whether it be separate or the community estate, in the entire 1,500 acres is clearly stated in the inventory, and is prima facie true in an ordinary statutory proceeding in trespass to try title like this is.

[19] Construing these proceedings, including the report of the sale and the order approving such report and the direction to the administratrix to make the deed to the purchaser according to the intention of the parties as evidenced by the record, we conclude that, regardless of the question whether the land was community or separate estate of W. R. Wooten, deceased, L. A. Abercrombie, the purchaser and grantee in the deed, acquired from such proceedings *all* of the interest belonging to the estate of W. R. Wooten, deceased, in the whole of the 1,500 acres, and that, having so acquired *all* of the interest, the defendants in error as legal representatives of the only child and heir at law of W. J. Wooten have no inheritable interest remaining therein.

[20, 21] The third assignment of error challenges the action of the trial court and also that of the Court of Civil Appeals in refusing to sustain the contention of the plaintiffs in error that the evidence established their pleas of limitation of 5 years and also of 10 years. Unless the holding of the Court of Civil Appeals upon the facts relating to an issue made by the pleadings and the testimony is so palpably and flagrantly wrong as to amount to a refusal to apply to the case the established law of the state, the Supreme Court is without authority to review it. One who seeks to establish title to land by virtue of the statutes of limitation assumes the burden of proof upon this issue, and this proof must be clear and satisfactory. Guided, as we must be, by these rules of law, an inspection of the record compels the conclusion that this assignment should be overruled.

[22] The fourth assignment of error questions the correctness of the ruling of the Court of Civil Appeals in sustaining the action of the trial court in overruling the motion for a new trial on the ground of newly discovered testimony. Evidently the Court of Civil Appeals concluded the plaintiffs in error failed to show sufficient diligence to entitle them to a new trial on this ground, and the Supreme Court has no authority to review the conclusion, since the record shows the existence of a situation amply justifying it, and we therefore are of the opinion this assignment is without merit and should not be sustained.

The plaintiffs in error not having presented any assignment of error based upon the action of the Court of Civil Appeals in affirming the judgment of the district court denying any recovery upon their cross-action, and the amended petition of the defendants in error having sought a recovery for an undivided one-fourth of the 1,500 acres described therein, as the heirs of W. J. Wooten, deceased, the only heir at law of W. R. Wooten, deceased, both of whom died intestate, and as the record as made does not affirmatively show the defendants in error to have inherited any portion of said land as such heirs, we recommend that the judgments of the Court of Civil Appeals and of the district court be reversed, and judgment be rendered that the defendants in error take nothing, and that plaintiffs in error recover all costs incurred in the Supreme Court, as well as the Court of Civil Appeals and the district court.

CURETON, C. J. Judgments of the Court of Civil Appeals and District Court both reversed, and judgment rendered for plaintiffs in error.