**URSCHEL et al. v. GARCIA.**

No. 11137.

Court of Civil Appeals of Texas.
San Antonio.

Aug. 19, 1942.

Rehearing Denied Oct. 7, 1942.

H. P. Guerra, Jr., of Rio Grande City, Strickland, Ewers & Wilkins, of Mission, and R. D. Cox, Jr., of McAllen, for appellants.

John A. Pope, Jr., of Rio Grande City, and Bismark Pope, of Laredo, for appellee.

SMITH, Chief Justice.

Action in trespass to try title brought by M. M. Garcia to recover Surveys 539 and 541 in a certain grant in Starr County. The suit was against C. F. Urschel and others, who are successors in title to Tom B. Slick, deceased, the admitted record owner of the title. Garcia recovered judgment below under the ten-year statute of limitation, based upon the jury's affirmative answer to the only issue submitted to them,

to-wit: "Do you find from the preponderance of the evidence that M. M. Garcia, either in person or through a tenant or tenants, or partly in person and partly through a tenant or tenants, or an employee or employees, held peaceable and adverse possession of Surveys No. 539 and 541, in Starr County, Texas, under claim of right, using or enjoying the same under a fence including less than 5,000 acres continuously for any period of ten consecutive years or more prior to December 16, 1940?"

The appeal rests primarily upon appellants' contention, variously presented, that the evidence was insufficient to raise the issues essential to support title in appellee by limitation.

The two surveys in question, 539 and 541, lie within appellee's La Brisa Ranch, made up, separately, of the Longoreno, the Salado, the Junco and other smaller pastures. Surveys 539 and 541 are within the Longorena Pasture, along with other surveys, including 538, 540 and 542. It is conceded that throughout the period of claimed limitation appellee resided in the City of Laredo and was never in pedal possession of the property. He relied solely on possession by others for him.

The case may be simplified by this statement: Appellee admitted on the trial, and concedes the fact on this appeal, that as early as 1936 he knew that the fence between the Longerino and Salado pastures was down and remained down until 1938, whereby the enclosed acreage was enlarged to more than 5,000 acres, thus interrupting limitation. And appellee proved by the testimony of his own witnesses that they removed that fence sometime in 1934. By reason of this admitted fact appellee's claim of ten-year limitation was restricted as a matter of law to the period ending on January 1, 1935. The evidence of appellee's possession during that period is vague, uncertain and unsatisfactory in some of the essentials, as may be hereafter seen.

■ In their first point appellants assert that they were entitled to a directed verdict because of appellee's purported testimony, in the trial of another case in the year 1938, that he did not own the two surveys in controversy here. It is doubtful if that testimony of appellee amounted to an effective judicial admission against his interest. But whether it did or not, it is immaterial to this appeal. The record shows as a matter of law that appellee's possession was interrupted as of January 1, 1935, and his claim of title by the ten-year statute of limitation had matured at that time, if at all. If appellee's title had matured in 1935, his subsequent parol admission could not be given effect to divest that title out of him. This is elemental. We overrule appellants' first point.

■■ Appellants raise, in various ways, the sufficiency of the evidence to support appellee's claim of title by limitation through possession. It may be stated, to begin with, that at the time appellee claims his possession began, he owned no part of the Longoreno, nor the fence inclosing it; he did not reside on it himself, pastured no stock on it, had no tenants on it, made no sort of use of it. This was the status for several years thereafter, except as it may have been affected by the occupancy by Silva, Hinojosa and Garza of Surveys 538, 540 and 542, in that pasture in pursuance of their obligation to the State to occupy those surveys as their homes for three years following their application made in 1917 to purchase those surveys. According to appellee's testimony this occupancy by those three men, "with his permission and for his use," was the sole basis of his claim of possession until some time in 1923. Appellee then testified that that (1923) "was the time when I might say I started fully into possession, although I was still letting them (the three actual settlers) use the land, and it was a time when the rest of the ranch was not leased and consequently my use was made of all the ranch." This testimony of appellee that he then "started fully in possession" was but a pure conclusion of law, and therefore was no evidence of any of the facts of possession. So also was his conclusion that his "use was made of all the ranch." When asked what use he made of it, he answered that "at the moment I just had it taking care of it until I could lease it." Such testimony is not sufficient to support a claim of limitation by exclusive and adverse possession, for the burden of proof upon such issue is on the claimant and such proof must be clear and satisfactory. Moore v. Wooten, Tex.Com. App., 280 S.W. 742; Id., Tex.Com.App. 283 S.W. 153.

As stated, the evidence of appellee's possession was vague, indefinite and unsatisfactory, and without indulging intendment in support of the claim of adverse, exclusive and continuous possession, numerous hiatuses occur in the chain of possession.

In the first place, some gaps in appellee's possession were sought to be bridged by appellee's statement that he, or others for him, "took possession," "went into possession," "was in possession," and the like. Those statements were pure conclusions of law on the part of the plaintiff-witness, and constituted no evidence of possession. 2 Tex.Jur. p. 74, § 38.

■ Other gaps in possession were sought to be filled by appellee by testifying that between occupation by lessees he "had/ a man" there in the pasture to "keep up the fences" around the enclosure. There was no evidence that appellee was cultivating or otherwise actually using the land in the enclosure. It is well settled that the mere maintenance of fences around or other improvements on land, unaccompanied by actual occupancy or open use, does not constitute such adverse possession as will support a claim of title by limitation; a constructive possession alone is not sufficient. 2 Tex.Jur. p. 82, § 43; Niday v. Cochran, 42 Tex.Civ.App. 292, 93 S.W. 1027, writ refused.

As has been shown, appellee relied on the occupancy of three surveys owned by them in the Longoreno pasture by Garza, Silva and Hinojosa until they sold out to appellee. This adverse occupancy continued, presumably, to the end of 1923. One or more of the three remained in some undisclosed sort of possession for an indefinite period after they sold to appellee, but he testified that their possession was his by reason of his employment of them for that purpose. There is a vague hiatus between their possession and that of appellee. Besides, there was no competent evidence that those three men made any use of the entire enclosure, or any use of any of the land therein except that in their own three surveys.

Appellee bought out the three settlers on Surveys 538, 540 and 542, sometime in 1923, and thereby was for the first time put in position to assume possession of the Longoreno, which embraces the land in controversy. Evidence of his possession thereafter, and before June, 1924, is vague, indefinite and inconclusive under the rule that proof of possession in ·such cases must be clear and satisfactory. Appellee testified on this point: "In 1923 is the time when I might say I started fully in possession, although I was letting them use the land. I used the land in 1923. I was taking care of it until I could lease it. Chano Perez had a few head of cattle there, and that included Surveys 539 and 541." Chano Perez was appellee's employee and foreman.

We are of the opinion that this testimony, consisting almost entirely of conclusions of law and generalities of fact, falls far short of that clear and satisfactory proof essential to a showing of such peaceful, adverse, exclusive and continuous possession and use. of land as will support a limitation title under the statutes. Art. 5510, R.S.1925; 2 Tex.Jur. p. 74, § 38, p. 82, § 43; Moore v. Wooten, Tex.Com.App., 280 S.W. 742; Id., Tex.Com.App., 283 S.W. 153; Murphy v. Welder, 58 Tex. 235; West Production Co. v. Kahanek, 132 Tex. 153, 121 S.W.2d 328; Gibbs v. Corbett, Tex.Civ. App., 292 S.W. 260; Niday v. Cochran, 42 Tex.Civ.App. 292, 93 S.W. 1027. This failure to show possession continued until June, 1924.

■ In June, 1924, appellee leased the entire Longoreno to R. A. Boyd for pasturage purposes, and by that act, and that alone, he assumed, for the first time, that character of possession essential to his claim in this case.

Boyd's lease ran for two years, to June, 1926. There followed a hiatus between leases extending from the end of the Boyd lease, in June, 1926, until appellee leased the Longoreno to Archie Parr, on December 1, 1927, a period of eighteen months.

Appellee attempted to bridge this hiatus, but his testimony on the issue was not ·sufficient, in our opinion. He testified that at some time during this break, apparently in December following the termination of Boyd's lease in June, "Judge Garza and his friends" whom appellee could not even name or appear to know, had pastured cattle on the Longoreno for five or six months. This testimony was quite vague, as to who these parties were, other than Garza, and as to their understanding, if any, with appellee, who testified, generally, that those parties were using the pasture "with his permission." They did not use the pasture under any sort of lease or other definite attornment to appellee; the duration of their use was not clearly, if at all, disclosed, nor was the extent of their use, except that they pastured about 400 cattle on the land. This is the only evidence of possession offered by appellee to fill the gap of tenancy between the expiration of the Boyd lease, in June, 1926, and the beginning of the succeeding lease to Parr, on December 1, 1927.

Stating appellee's testimony in detail, he said on the stand:

"Q. Now, Mr. Garcia, who preceded Senator Parr in leasing that from you? Who was the tenant of that ranch out there prior to Senator Parr as a lessee of all of the place?

"A. R. A. Boyd (from June, 1924 to June, 1926) and D. Garza from December, 1926, and also in the spring, May or June, about in there, had about 400 cattle of his own and some of his friends from over here, this part of the ranch, grazing on the Longoreno and well separated from the others. * * .*

"Judge Garza went in there during 1926 and in there in the year 1927.

"And Judge Garza continued grazing his stock in there until Senator Parr entered?

"No, only until about the middle of the year; May or June, around in there. They were there five or six months.

"Then there was an interval from the time Judge Garza went out until Senator Parr came in that nobody was there?

"I had men there.

"Who did you have there?

"Chano Perez and some men he put there for me.

"You don't know who they were?

"I don't know who they were. He was there.

"What did you have those men out there for?

"When he wasn't at the ranch taking care of the house and barns and things he was going around the fences occasionally."

Appellee testified, further: "After he (Boyd) left Judge Garza and friends put about 400 head of cattle in the Longoreno pasture. I went there during the time he was there and observed the fences. After Judge Garza about four or five months I took care of the place by myself, with hands I had there, and then leased to Senator Parr."

■ We conclude, under the authorities cited above, that this testimony fell far short of that required as a basis for a claim of title by limitation. This break in continuous possession existed for eighteen months, and was fatal to appellee's claim. Dunn v. Taylor, 102 Tex. 80, 113 S.W. 265.

On December 1, 1927, Senator Archie Parr took possession, under a lease, from appellee. Parr's lease and consequent possession was continuous until December 1, 1929. Then ensued another hiatus until one Cantu leased the land, "in 1930," according to appellee's testimony. His testimony designed to bridge this hiatus was fragmentary and vague, but appellants seem to concede it to have been sufficient.

Cantu's lease and possession was for two years, to August, 1932. Ensued, then, another hiatus, from the expiration of the Cantu lease until December 2, 1933, about sixteen months, when Ben Horton leased the Longoreno. Appellee undertook to fill in that gap. He was asked and answered:

"Who went into possession the latter part of 1932?

"I went into possession myself.

"What kind of use did you make of the property?

"A little grazing.

"That included the surveys 539 and 541?

"Yes, sir.

"How long did you remain in possession then?

"Until I leased it again on the 2nd day of December, 1933.

"1933?

"Yes, sir.

"Who did you lease it to then?

"Ben D. Horton, a man from close to Carrizo Springs or in there somewhere.

"Between the time that Cantu left and the time you leased to Horton who was in charge of the property?

"I was in charge. I had a man taking care of everything.

"Who was your foreman there?

"Perez and when he wasn't there I had a man there."

■ We are of the opinion that this testimony was insufficient to show a use amounting to possession.

Horton's lease continued until 1938. In the meantime, however, in 1934, appellee's possession was interrupted by enlargement of the enclosure to more than 5,000 acres, as has already been shown.

To summarize, there was no continuity between the several lessees of the land. The first lessee was Boyd. The tenure of his tenancy was from June, 1924, to June, 1926. The land was not leased again until eighteen months later, when Parr leased it, on December 1, 1927; his lease terminated on De-

cember 1, 1929. The next lease was not made until nine months later, in August, 1930, when Cantu's lease began; it terminated two years later, in August, 1932. The next lease was made fifteen months later, on December 2, 1933, to Horton, and continued until the enclosure was enlarged and admittedly interrupted appellee's claimed possession, as of not later than January 1, 1935. Those breaks between the tenancy of the several lessees would not alone and of themselves defeat appellee's claim of continuous, exclusive adverse possession, if he had shown by clear and satisfactory evidence that between those leases he made such continuous and unbroken actual use of the land as to meet the requirements of the law. But, as we have attempted to point out, appellee made no such proof. He was an adroit and capable witness, in his own behalf, but most of his testimony on the essential issue was vague, confusing, indefinite, and consisted in the main of pure conclusions of law and mere generalities, which do not suffice as clear and satisfactory evidence required in such cases.

■ Because the evidence was insufficient to support the jury's one finding of fact upon the issue of continuous adverse possession for any period of ten years prior to the interruption of that possession in 1934, the trial court erred in not granting appellants' motion for directed verdict in their favor, and it becomes the duty of this Court to correct that error by reversing the judgment appealed from and here rendering judgment that appellee recover nothing. It is so ordered.

Reversed and rendered.