NO.
07-08-0476-CR

 

IN THE COURT OF APPEALS

 

FOR THE SEVENTH DISTRICT OF TEXAS

 

AT AMARILLO

 

PANEL D

 



MAY 27, 2010

 



 

PHILLIP DOYLE CHANEY,  

                                                                                         Appellant

v.

 

THE STATE OF TEXAS,  

                                                                                         Appellee

_____________________________

 

FROM
THE 50TH DISTRICT COURT OF COTTLE COUNTY;

 

NO.
2834; HONORABLE WILLIAM H. HEATLY, PRESIDING

 



 

Dissenting Opinion

 



 

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

            I respectfully dissent from the
conclusion that the evidence of guilt was legally sufficient.   My conclusion is founded upon the test we
have historically utilized in addressing such issues.  The test mandates that we defer to the jury’s
decision unless it is irrational or not supported by some evidence.  Ortegon v. State,
267 S.W.3d 537, 546 (Tex. App.–Amarillo 2008, pet. ref’d).  That test is not a mandate of our own
creation but rather that of our Court of Criminal Appeals espoused years ago, e.g., Moreno v. State, 755 S.W.2d 866,
867 (Tex. Crim. App. 1988) (requiring intermediate appellate courts to deem
legitimate a jury’s verdict unless it was irrational or lacked evidentiary support),
and, as such, must be followed.  

            So stated, the standard of review by
which we must abide likens to the words oft used in describing the standard of
review utilized in assessing whether a decision evinced an abuse of discretion.  According to the latter, the decision must
comport with the law and have evidentiary basis, Rachal v. State, 917 S.W.2d 799, 808 (Tex. Crim. App. 1996), or fall within
the zone of reasonable disagreement.  Winegarner v. State, 235 S.W.3d
787, 790 (Tex. Crim. App. 2007).  Both
gauge the actor’s (the factfinder’s or judge’s) conduct against the rules of law and the circumstances
(or evidence) before him.  And, given
that, both have two components, that is, the rationality or reasonableness of
the decision and the presence of evidence to support it.  

            It is the first component that I now
discuss in conjunction with the appeal before me.  At the very least, to be rational a decision
must be one made by a body opting to comport its determination to the law.  Again, harkening back to the idea of abused
discretion, a ruling that deviates from the law or misconstrues the law is not
a legitimate exercise of discretion.  Rachal, 917 S.W.2d at 808.  Likewise,
a verdict founded upon inaccurate legal theorems cannot comport with the law
and thereby be rational.  And, therein
lays the seed of my discontent.

            The only “evidence” purporting to
illustrate that the appellant intentionally or knowingly intended the death of
the victim came from Texas Ranger Jay Foster. 
As indicated in the majority opinion, he all but conceded that he
actually found nothing indicating that appellant intentionally killed anyone.  Nonetheless, that did not stop him from
arriving at the conclusion he desired by interjecting evidence regarding appellant’s
employment and hypothesizing therefrom. 
As a prison guard, according to the ranger, appellant should be held to
a higher standard of conduct due to his familiarity with firearms.  And, the ranger continued, holding him to
that higher standard required one to conclude that appellant knowingly caused the death of Lukas Taylor as he tried to take the gun
away from him.  There are two fatal flaws
in considering such comments and inferences therefrom as probative evidence
when assessing the legal sufficiency of the evidence, however.  

First, if those suppositions were to comport
with the law, they would be nothing other than conclusions of law; that is,
statements of what the law is.  Ford v. State, 108 Tex. Crim. 626, 2 S.W.2d
265, 266 (1927) (defining a conclusion of law). 
 And, as we know, statements
tantamount to conclusions of law are not probative evidence under our
jurisprudence.  Urschel v. Garcia, 164 S.W.2d
804, 806 (Tex. Civ. App.–San Antonio 1942, writ ref’d w.o.m.) (stating
that a conclusion of law is not any evidence supporting a verdict); Watson v. Tamez,
136 S.W.2d 645, 646 (Tex. Civ. App.–San
Antonio 1940, no writ) (stating that a conclusion of law has no probative force
and cannot be considered evidence even if no objection is made to it).  Second, the ranger’s opinion is not even a
correct statement of the law.  The State cites
us to no authority holding that because one may be employed as a prison guard
or peace officer, he is bound by a higher standard of conduct when handling firearms.  Nor did I find any such authority.  And, while it may be arguable that one’s
familiarity with such weapons may mean that he or she has a greater awareness
of the harm they can inflict, that does not logically entitle one to conclude
that any particular outcome linked to the handling of such weapons by those
people was intended.   I remind the
reader that to be guilty of intentionally causing the death of another, the
actor must have had the conscious objective or desire to cause the result, i.e. the death of the victim.  Tex. Penal Code Ann. §6.03(a)
(Vernon 2003).  
Being aware of the potential for harm does not equate to proof that appellant
had the conscious objective or desire to kill. 


Nor does the evidence of record illustrate
a knowing murder for purposes of the Texas Penal Code.  For the death to fall within that category, the
actor must be aware that his conduct is reasonably certain to cause death.  Id. §6.03(b).  While
appellant may have known, due to his training, that struggling with another for
a gun could result in someone’s
death, that is not evidence that his conduct would, with reasonable certainty, cause
death.  Indeed, if knowing that one’s
handling or mishandling of a firearm could result in a death were enough to
satisfy the mens rea for
murder, then every experienced hunter holding a rifle or handgun would have the
requisite mens rea for the
crime.   This is so because he or she
undoubtedly knows that manipulating such a weapon could cause death should it
discharge for whatever reason, and that is not a posture in which I care to put
the millions of hunters in this state or anyone else that may care to exercise
rights allowed under the Second Amendment to the United States Constitution.  Rather, the evidence here had to illustrate
that appellant was reasonably certain that his attempt to retrieve the handgun
would result in death, and a Texas Ranger’s opinion founded on a mistaken legal
premise is not such evidence. 

That the ranger purportedly
discredited appellant’s version of how or why the handgun discharged fails to
fill the mens rea void as
well.   To believe otherwise would be to
equate a negative (i.e. discrediting
a defendant’s version of what happened) to a positive (i.e. proof that the contrary occurred or that appellant pulled the
trigger).  To my limited understanding of
math, science and logic, that is not possible. 
Furthermore, it may well be that appellant had his finger on the trigger
when the gun fired but the record leaves me to guess at whether he, at that
time, desired the death of his friend or even was reasonably certain that death
would result.  Whether the trigger was
pulled via appellant’s own muscle contractions which manipulated his finger’s
movement or by the victim somehow pulling the weapon or striking appellant’s
finger is also left to conjecture.      

As for the testimony coming from those
who simply concluded that appellant “caused” the victim’s death or “caused” the
shooting, neither statement addresses the concept of mens rea; rather it simply involves nexus or
causation at best.  Such comments are nothing
more than saying that appellant erected the dominoes.  One cannot logically deduce from the act of
erecting them that he either knocked them over,
intended that they be knocked over, or was reasonably certain that they would
be knocked over.  

            Thus, what we have here is a situation
wherein the jury must have adopted misstatements
of the law, accepted legal conclusions as evidence, or made logically insupportable inferences to
ultimately arrive at the finding that appellant committed murder.  Because a jury does not act reasonably when doing
so, its finding is irrational. 

            As for the second prong of the
standard of review, I too believe that it has application here.  Again, the only way that the jury could have
found appellant guilty of intentional murder is by accepting as evidence the ranger’s
utterance regarding the application of higher standards of conduct to
appellant.  Yet, since those comments are
nothing short of conclusions of law (and legally inaccurate conclusions at that),
they had no probative evidentiary force. 
This, in turn, means that they are not evidence upon which the verdict
could be based.  

            In sum, I would sustain appellant’s
legal sufficiency point, reverse the judgment and render judgment acquitting
appellant of murder.

 

                                                                                    Brian
Quinn

                                                                                    Chief
Justice

 

Publish.

                                                                                    

                                                                                    

 

 

 






ass=MsoNormal style='text-align:justify;text-indent:.5in;line-height:200%'>Appellant Dustin Sexton appeals from
his conviction for domestic violence assault and the resulting sentence of 365
days in the Lubbock County Jail, suspended in favor of community supervision
for a period of twenty-four months. 
Through one issue, appellant contends the trial court erred in admitting
testimony concerning statements made by the victim.  We disagree and affirm the judgment of the
trial court.

 

 

 

 

Background

            Appellant
was charged by information with intentionally, knowingly or recklessly causing
bodily injury to a female victim, his girlfriend.[1]  Appellant plead not guilty and the case was tried to a jury.

            Appellant
does not challenge the sufficiency of the evidence to support his conviction,
so we will recite only those facts necessary to disposition of his appellate
issue.  Appellant’s girlfriend called
911, reporting a domestic disturbance. 
When a Lubbock police officer responded to her 911 call, the victim
answered the door.  She had what the
officer believed to be streaked blood on her cheek and dried blood around her
mouth.  The victim told the officer she
and appellant had fought.  Appellant, she
said, pulled her hair, punched her, and threw her on
the floor.  

            Some time after these events, the victim completed and
signed an affidavit of non-prosecution provided her by appellant’s
counsel.  During the week before
appellant’s case was to go to trial, the victim met with a prosecutor.  She testified she told the prosecutor during
that meeting that what she told the officer the night of the alleged assault
was not true.  The State offered her
immunity.    

            At trial, the State’s case included the
victim’s 911 call, which was played to the jury over appellant’s objection.  In the call, the victim implicated appellant
as the cause of her injuries.  

            The State also called the victim to testify.  She first asserted her Fifth Amendment
rights, but then testified under the State‘s court-approved grant of use
immunity.  On the stand, she recanted her
accusations that appellant caused her injury. 
She acknowledged telling the officer appellant did so, but testified that
was not true.  Her testimony was that she
and appellant argued, and appellant tried to leave the apartment.  She injured her mouth
when appellant was walking out the door and she “grabbed onto his arm and he
was pulling outside of the door, and I was trying to pull him back in.  My hand let loose, and I hit myself in the
mouth.”  

            The officer also testified, recounting the victim’s
statements to him after her 911 call. 
Appellant objected to the State’s questioning of the victim and officer
about her statements implicating him as the cause of her injuries.

            The jury found appellant guilty and assessed punishment
against him as noted. This appeal followed.

Analysis

            When reviewing a trial court's decision to
admit or exclude evidence, we apply an abuse-of-discretion standard. Ramos v.
State, 245
S.W.3d 410, 417-18 (Tex.Crim.App. 2008). The trial court does not abuse its
discretion unless its ruling lies "outside the zone of reasonable
disagreement." Walters
v. State, 247
S.W.3d 204, 217 (Tex. Crim. App. 2007).

Appellant contends the trial
court abused its discretion by admitting the 911 call, the victim’s testimony
concerning her statements to the police officer and the officer’s testimony
concerning her statements, because the evidence should have been excluded under
the analysis discussed in Hughes
v. State, 4 S.W.3d 1 (Tex.Crim.App.
1999).[2]  The court there held that despite the
evidentiary rule permitting parties to impeach their own witnesses, a trial
court may abuse its discretion under Rule of Evidence 403 if it allows the
State to introduce impeachment evidence for the primary purpose of placing
before the jury evidence that otherwise was inadmissible.  Id. at 5.  In such
instances, the prejudicial effect of the ostensible impeachment evidence will
substantially outweigh its probative value because it is useful to the State
only if the jury misuses it by considering it for its truth.  Id.    

            Appellant points out the State
called her as its witness despite her execution of the affidavit of
non-prosecution and her statement to the prosecutor the week before trial
recanting her accusations against appellant, and argues the State’s grant of
immunity and statements to the jury panel demonstrate it knew she would testify
contrary to its case.  Appellant further
argues the State put her on the stand for the purpose of laying the predicate
for her prior inconsistent statements to impeach her.  The State responds with several reasons it
contends appellant’s argument lacks merit. After review of the record, we
conclude we need address only one of the State’s contentions.  We agree with the State the challenged
evidence was admitted for purposes other than impeachment, and find that
appellant has not contended on appeal that such admission was improper.  Accordingly, the Hughes rule has no application here at all.  

In
response to appellant’s hearsay objections to the 911 call recording, the
State’s questioning of the victim about her statements to the officer, and the
State’s questioning of the officer about the victim’s statements, the State
argued that all were admissible as excited utterances.[3]  The court overruled appellant’s objections,
and the evidence was admitted without limiting instructions.[4]  On appeal, appellant does not challenge the
applicability of the excited utterance exception to the hearsay rule.  The court heard testimony
from which it reasonably could have concluded the victim’s statements, both in
the 911 call and during her conversation with the officer, related to a
startling event and were made while she was under the stress of excitement
caused by the event.  Tex.
R. Evid. 803(2); see Dixon v. State, 244 S.W.3d 472, 485-86 (Tex.App.—Houston
[14th Dist.] 2007, pet. ref’d) (911 call
as excited utterance); Salazar v. State,
38 S.W.3d 141, 154 (Tex.Crim.App. 2001) (statement
attributing injury to defendant as excited utterance).  

The
Rule 403 analysis described in Hughes
applies to otherwise inadmissible evidence admitted under the guise of
impeachment.  Hughes, 4 S.W.3d at 5.  The trial court’s unchallenged apparent
conclusion the evidence in question here was not “otherwise inadmissible” takes
appellant’s complaint outside the scope of Hughes.  

 

 

Appellant’s
issue is overruled, and the trial court’s judgment is affirmed.

 

 

 

 

                                                                                                James
T. Campbell

                                                                                                            Justice

 

Do
not publish.











[1]   See Tex. Penal Code Ann.
§ 22.01(a)(1) (Vernon 2009); Tex. Fam. Code Ann. §
71.004 (Vernon 2001).





[2] Appellant relied also
on Barley v.
State, 906 S.W.2d 27, 37 (Tex.Crim.App. 1995) and Pruitt
v. State, 770 S.W.2d 909, 911 (Tex.App.—Fort
Worth 1989, pet. ref’d). 





[3] The State argued
also that the victim’s statements to the officer were admissible under Rule of
Evidence 803(3) as statements of her state of mind. 

 





[4] Appellant sought a
limiting instruction at trial but it was denied and its denial is not asserted
as error on appeal.