NO. 07-08-0476-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

MAY 27, 2010

_____

PHILLIP DOYLE CHANEY,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

FROM THE 50TH DISTRICT COURT OF COTTLE COUNTY;

NO. 2834; HONORABLE WILLIAM H. HEATLY, PRESIDING

_____

***Dissenting Opinion***

_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

I respectfully dissent from the conclusion that the evidence of guilt was legally sufficient. My conclusion is founded upon the test we have historically utilized in addressing such issues. The test mandates that we defer to the jury's decision unless it is irrational or not supported by some evidence. *Ortegon v. State*, 267 S.W.3d 537, 546 (Tex. App.–Amarillo 2008, pet. ref'd). That test is not a mandate of our own creation but rather that of our Court of Criminal Appeals espoused years ago, *e.g., Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988) (requiring intermediate appellate courts to

deem legitimate a jury's verdict unless it was irrational or lacked evidentiary support), and, as such, must be followed.

So stated, the standard of review by which we must abide likens to the words oft used in describing the standard of review utilized in assessing whether a decision evinced an abuse of discretion. According to the latter, the decision must comport with the law and have evidentiary basis, *Rachal v. State*, 917 S.W.2d 799, 808 (Tex. Crim. App. 1996), or fall within the zone of reasonable disagreement. *Winegarner v. State,* 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). Both gauge the actor's (the factfinder's or judge's) conduct against the rules of law and the circumstances (or evidence) before him. And, given that, both have two components, that is, the rationality or reasonableness of the decision and the presence of evidence to support it.

It is the first component that I now discuss in conjunction with the appeal before me. At the very least, to be rational a decision must be one made by a body opting to comport its determination to the law. Again, harkening back to the idea of abused discretion, a ruling that deviates from the law or misconstrues the law is not a legitimate exercise of discretion. *Rachal*, 917 S.W.2d at 808. Likewise, a verdict founded upon inaccurate legal theorems cannot comport with the law and thereby be rational. And, therein lays the seed of my discontent.

The only "evidence" purporting to illustrate that the appellant intentionally or knowingly intended the death of the victim came from Texas Ranger Jay Foster. As indicated in the majority opinion, he all but conceded that he actually found nothing indicating that appellant intentionally killed anyone. Nonetheless, that did not stop him

from arriving at the conclusion he desired by interjecting evidence regarding appellant's employment and hypothesizing therefrom. As a prison guard, according to the ranger, appellant should be held to a higher standard of conduct due to his familiarity with firearms. And, the ranger continued, holding him to that higher standard required one to conclude that appellant knowingly caused the death of Lukas Taylor as he tried to take the gun away from him. There are two fatal flaws in considering such comments and inferences therefrom as probative evidence when assessing the legal sufficiency of the evidence, however.

First, if those suppositions were to comport with the law, they would be nothing other than conclusions of law; that is, statements of what the law is. *Ford v. State,* 108 Tex. Crim. 626, 2 S.W.2d 265, 266 (1927) (defining a conclusion of law). And, as we know, statements tantamount to conclusions of law are not probative evidence under our jurisprudence. *Urschel v. Garcia*, 164 S.W.2d 804, 806 (Tex. Civ. App.–San Antonio 1942, writ ref'd w.o.m.) (stating that a conclusion of law is not any evidence supporting a verdict); *Watson v. Tamez*, 136 S.W.2d 645, 646 (Tex. Civ. App.–San Antonio 1940, no writ) (stating that a conclusion of law has no probative force and cannot be considered evidence even if no objection is made to it). Second, the ranger's opinion is not even a correct statement of the law. The State cites us to no authority holding that because one may be employed as a prison guard or peace officer, he is bound by a higher standard of conduct when handling firearms. Nor did I find any such authority. And, while it may be arguable that one's familiarity with such weapons may mean that he or she has a greater awareness of the harm they can inflict, that does not logically entitle one to conclude that any particular outcome linked to the handling of

such weapons by those people was intended. I remind the reader that to be guilty of intentionally causing the death of another, the actor must have had the conscious objective or desire to cause the result, *i.e.* the death of the victim. TEX. PENAL CODE ANN. §6.03(a) (Vernon 2003). Being aware of the potential for harm does not equate to proof that appellant had the conscious objective or desire to kill.

Nor does the evidence of record illustrate a knowing murder for purposes of the Texas Penal Code. For the death to fall within that category, the actor must be aware that his conduct is reasonably certain to cause death. *Id.* §6.03(b). While appellant may have known, due to his training, that struggling with another for a gun *could* result in someone's death, that is not evidence that his conduct would, with reasonable certainty, cause death. Indeed, if knowing that one's handling or mishandling of a firearm could result in a death were enough to satisfy the *mens rea* for murder, then every experienced hunter holding a rifle or handgun would have the requisite *mens rea* for the crime. This is so because he or she undoubtedly knows that manipulating such a weapon could cause death should it discharge for whatever reason, and that is not a posture in which I care to put the millions of hunters in this state or anyone else that may care to exercise rights allowed under the Second Amendment to the United States Constitution. Rather, the evidence here had to illustrate that appellant was reasonably certain that his attempt to retrieve the handgun would result in death, and a Texas Ranger's opinion founded on a mistaken legal premise is not such evidence.

That the ranger purportedly discredited appellant's version of how or why the handgun discharged fails to fill the *mens rea* void as well. To believe otherwise would be to equate a negative (*i.e.* discrediting a defendant's version of what happened) to a

4

positive (*i.e.* proof that the contrary occurred or that appellant pulled the trigger). To my limited understanding of math, science and logic, that is not possible. Furthermore, it may well be that appellant had his finger on the trigger when the gun fired but the record leaves me to guess at whether he, at that time, desired the death of his friend or even was reasonably certain that death would result. Whether the trigger was pulled via appellant's own muscle contractions which manipulated his finger's movement or by the victim somehow pulling the weapon or striking appellant's finger is also left to conjecture.

As for the testimony coming from those who simply concluded that appellant "caused" the victim's death or "caused" the shooting, neither statement addresses the concept of *mens rea*; rather it simply involves nexus or causation at best. Such comments are nothing more than saying that appellant erected the dominoes. One cannot logically deduce from the act of erecting them that he either knocked them over, intended that they be knocked over, or was reasonably certain that they would be knocked over.

Thus, what we have here is a situation wherein the jury must have adopted misstatements of the law, accepted legal conclusions as evidence, or made logically insupportable inferences to ultimately arrive at the finding that appellant committed murder. Because a jury does not act reasonably when doing so, its finding is irrational.

As for the second prong of the standard of review, I too believe that it has application here. Again, the only way that the jury could have found appellant guilty of intentional murder is by accepting as evidence the ranger's utterance regarding the application of higher standards of conduct to appellant. Yet, since those comments are

nothing short of conclusions of law (and legally inaccurate conclusions at that), they had no probative evidentiary force. This, in turn, means that they are not evidence upon which the verdict could be based.

In sum, I would sustain appellant's legal sufficiency point, reverse the judgment and render judgment acquitting appellant of murder.

Brian Quinn
Chief Justice

Publish.